THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS PAPPROTH, Defendant-Appellant.

Fifth District   No. 76-435

Opinion filed December 28, 1977.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, and James L. VanWinkle, research assistant, for appellant.

Patrick J. Hitpas, State's Attorney, of Carlyle (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:
Defendant, Dennis L. Papproth, was found guilty after a bench trial of

the offenses of speeding and driving a motor vehicle while his license was revoked (Ill. Rev. Stat. 1975, ch. 95½, pars. 11—601(b) and 6—303(a)). The court fined him $25 and court costs on each offense. He appeals the conviction for driving while his license was revoked (Ill. Rev. Stat. 1975, ch. 95½, par. 6—303(a)).

Defendant contends that he was not properly found guilty of this offense because the evidence revealed that at all pertinent times he possessed a valid temporary driver's license which was not procured by fraud. We agree.

Before addressing the merits of this case, we must comment on the motion of the State for rescission of appointment of counsel for defendant on appeal, and discuss the State's contention that this case should be dismissed because of defendant's failure to file a post-trial motion. See *People v. Hammond* (5th Dist. 1977), 48 Ill. App. 3d 707, 362 N.E.2d 1361.

■■ The Office of the State Appellate Defender was appointed to represent defendant. This court initially entered an order granting a motion to rescind that appointment, but that order was vacated February 10, 1977. Some 8½ months elapsed before the State filed the instant motion which was ordered taken with the case. At that time, briefs had been filed by both parties, the case had been set for oral argument and the State had notified this court that it was waiving oral argument. Considering these circumstances, we believe the motion was, and is, moot and need not be considered on its merits.

■■ The contention of the State that defendant's failure to file a post-trial motion subsequent to his bench trial requires dismissal of this appeal is without merit. It has long been held that a post-trial motion is not necessary in a bench trial to preserve for review questions of the sufficiency of evidence. (*People v. Hoffman* (1942), 381 Ill. 460, 45 N.E.2d 874; *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239; *People v. Larsen* (1977), 47 Ill. App. 3d 9, 361 N.E.2d 713.) In addition, defendant fully apprised the court of his position with respect to his temporary driver's license and its effect upon the charge at trial.

The relevant facts are as follows. On June 16, 1976, defendant was driving a truck in Clinton County in connection with his job, hauling rock to Carlyle Lake. He was stopped by an Illinois State trooper and ticketed for a speeding violation which the trooper had observed a few days before when he (the trooper) was off duty and traveling in his personal auto. Defendant exhibited a temporary driver's license valid on its face in his own name.

The trooper ran a check with the Secretary of State's office and as a result was advised that defendant had a "suspended" Illinois driver's license. A second check produced identical results, and the trooper

ticketed him for driving with a suspended license in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 6—303(a)).

Defendant testified that he was involved in an accident in 1968 one result of which was that he was required to post an insurance policy as proof of his financial responsibility in order to retain his privilege to drive. Between 1968 and 1972 he cancelled his insurance several times when he wasn't driving or his vehicle was inoperative because his premiums were "pretty high." On these occasions, the insurance carrier notified the Secretary of State of the cancellations and his license would then be suspended until his policy was reinstated. In 1972 he received notice of the revocation of his license. He spoke to an investigator at that time who told him he would have to wait one year to reinstate his driver's license.

The order of revocation states that the action was taken as a result of defendant's having been repeatedly convicted of offenses against laws and ordinances regulating the movement of traffic. An examination of the defendant's driving record by the court, with the assistance of the arresting officer, suggested that the record revealed three moving violations within a year prior to defendant's revocation.

Defendant further testified that in 1972, after his license was revoked, he moved to California and obtained a driver's license there which was renewed in 1975. He informed the California authorities of his 1972 Illinois' revocation at both the times of his original application and renewal application. In 1976 he returned to Illinois, and within a month or two he went to the driver's license examining station in Belleville, Illinois, to turn in his California license and get an Illinois license. He took a written test and informed the examiner that his license had been revoked in 1972, explaining his problems with insurance and suspensions. The examiner did not check the Secretary's records in Springfield at that time, but rather, issued him the temporary driver's license which defendant had on June 16, 1976.

The record reflects that approximately one week after the instant arrest, the Secretary of State notified defendant that this temporary license was cancelled until he provided proof of insurance. On July 19, 1976, before trial, defendant received a new temporary license pending the forwarding of his regular license.

■■ It is well settled that the only elements necessary to prove the offense of driving a motor vehicle after the revocation of one's driving privileges are: (1) the act of driving a motor vehicle on the highways of this State; and (2) the fact of the revocation of the driver's license or privilege. (*People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897; *People v. Strode* (1973), 13 Ill. App. 3d 697, 300 N.E.2d 323.) Defendant's contention, basically, is that element two was not established because he

had a temporary license not obtained by fraud at the time in question.

■■ Section 6—208(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 6—208(b)), which governs application for a license after revocation, makes it clear that if a license or privilege to drive has been revoked there is no automatic restoration of the privilege. (*People v. Suddoth* (1964), 52 Ill. App. 2d 355, 358, 202 N.E.2d 120.) Before the privilege to drive may be restored to one whose license was revoked for repeated moving violations, section 6—208 first requires that he make an application for a license as provided in section 6—106 after the expiration of one year from the date of the revocation. Irrespective of the cause for revocation, the Secretary of State is directed not to issue a license until satisfied that to grant the applicant the privilege to drive will not endanger the public safety or welfare.

Section 6—106(b) (Ill. Rev. Stat. 1975, ch. 95½, par. 6—106(b)) provides in pertinent part: "Every application shall state * * * whether the applicant has theretofore been licensed as a driver, * * * and whether any such license has ever been cancelled, suspended, revoked or refused, and, if so, the date and reason for such cancellation, suspension, revocation or refusal."

In *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897, our supreme court applied the above rules and requirements in its review of the propriety of a defendant's convictions on charges identical to the one involved here when the defendant possessed a driver's license valid on its face, at the time of the offense.

The relevant facts of *Turner* are as follows. In 1968, the driver's license of Frank Turner was ordered revoked on two separate occasions for two different grounds (Ill. Rev. Stat. 1967, ch. 95½, pars. 6—205(a)(3) and 6—206(a)(10)). In 1970, Turner applied for a license in his own name, which application was denied. In June of 1972, Turner again applied for a driver's license using the name "Karry Sharp." On this application he answered "No" to the question asking whether his driving privileges had ever been revoked. He was thereafter issued a license under the name "Karry Sharp." This license was not cancelled until after he was charged three times for driving while his privilege to drive was revoked.

The supreme court reversed the appellate court's reversal of Turner's convictions of these offenses stating:

> "The legislature has established through section 6—208 the procedure to have driving privileges restored. *It calls for the disclosure of the revocation or other action taken against the applicant* and then provides that the Secretary shall not issue a license until he has investigated the applicant and determined that to grant the privilege of driving on the highways will not endanger the public safety or welfare.

The Secretary of State had revoked the defendant's license, and it could be restored only upon compliance with the provisions of the statute. *The defendant, of course, did not comply with the provisions of section 6—208. His privilege to drive was not restored through his fraudulently obtaining a license under the name 'Karry Sharp.'"* (Emphasis added.) 64 Ill. 2d 183, 186-87, 354 N.E.2d 897, 899.

The above language indicates that the court found that if one purposely conceals the fact of his license's previous revocation in order to mislead the authorities and prevent them from properly determining whether he should be granted a license, he may not interpose a license so procured as a defense to the charge of driving while his license was revoked. In view of this focus and the circumstances present here, we believe an opposite result is appropriate.

The defendant here did not conceal his identity nor the fact of the previous revocation of his license. Had he wished to deceive the Secretary of State's office he could well have lied about his revocation as the defendant in *Turner* did. His answer as to the reason for such revocation was not completely correct, however, the evidence does not support a finding that he was attempting to perpetrate a fraud but rather suggests an honest confusion. The concept of fraud implies a wrongful intent, an act calculated to deceive. (*Exline v. Weldon* (1974), 57 Ill. 2d 105, 311 N.E.2d 102; *People v. L & M Liquors, Inc.* (1976), 37 Ill. App. 3d 117, 345 N.E.2d 817.) Such an intent or calculation cannot be reasonably inferred from the present record.

The trial judge, in adjudging defendant guilty, did not find that defendant intended to deceive the authorities by giving the answer he did concerning the reason for revocation. Rather, the court manifested a belief that defendant had been negligent and that the end result, "in effect," was a fraud. The following language reflects the court's view:

"Maybe Mr. Papproth was under some impression that that [repeated suspensions for insurance reasons] was a reason [for the revocation] but he had reason to belief that [*sic*], to know that the clear reason was because of his driving record. * * * I think he obtained the license by fraud. Now maybe fraud means a deliberate intent to put something across on someone. It wasn't a very deliberate thing as I say but it was grossly negligent because he has reason to know otherwise. I find him guilty of that charge too."

The *Turner* rule should not be applied, as the trial court apparently did here, to a situation where an unintentional error is made in an application, especially when it does not mislead the Secretary of State as to whether the applicant should be investigated.

Perhaps the examiner in Belleville erred in issuing defendant a

temporary license without first investigating defendant and his driving record or allowing time for further investigation. Section 6—208(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 6—208(b)) would seem to indicate so. Nevertheless, defendant should not be held criminally responsible because of such oversight. He stated that his license had been revoked in 1972 in his application in 1976. This was sufficient to alert the examiner of the need to determine if granting him the privilege of driving would endanger the public safety or welfare. He chose, faced with this information, to issue a temporary license without even checking with the Secretary's office in Springfield. See generally 19 Ill. L. & Prac. *Fraud* §14, at 576 (1956), and *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89 (requirement of ordinary care to discover the truth by one claiming fraud).

Moreover, although it is not a basis for our decision, we note that it appears that the Secretary of State's office did not rely on defendant's representation as to the reason for the revocation. Once aware of the previous moving violations, that office did not cancel or deny him a license because of those violations.

Reversed.

EBERSPACHER, P. J., and CARTER, J., concur.