THE CITY OF EVANSTON, Plaintiff-Appellee, *v.* LUTHER I. CONNELLY, Defendant-Appellant.

First District (4th Division)    No. 77-1236

Opinion filed June 21, 1979.

Engelman & Smith, of Evanston, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela Louise Gray, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Following a bench trial the defendant, Luther Connelly, was convicted of driving while his driver's license was revoked in violation of section 6—303 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1977, ch. 95½, par. 6—303.) Defendant was sentenced to a term of 45 days in the House of Correction. His sole contention on appeal is that his conviction should have been precluded by his possession, at the time of his arrest, of a valid temporary driver's permit.

We affirm the conviction.

The trial was conducted with stipulated facts and evidence. A certified copy of defendant's driving abstract, prepared by the Secretary of State, was introduced into evidence and established that defendant's driving privilege had been revoked since October 1972. On March 17, 1977, defendant applied for a new license, using his correct name but

falsely stating that his driving privileges had never been revoked or suspended.[1] He was issued a temporary driver's permit and was informed that a permanent license would be mailed to him. On March 25, 1977, the defendant was stopped by Evanston police officers and arrested for driving while his license was revoked. At that time he produced his temporary permit. On April 6, 1977, defendant was notified by the Secretary of State that the revocation of his driving privilege had been extended on March 17, 1977, and he would not be issued a new license. He was also instructed to return the temporary permit and he did so.

■■ Because defendant presented no motion for a new trial following his conviction the State now contends that the issue of the effect of the driver's permit has been waived. Although generally this failure to raise an issue in a motion for a new trial would constitute a waiver, we note that in this cause the issue was squarely presented to the trial court and formed the basis of the defense theory at trial. The central purpose of the requirement that issues be raised first in a motion for a new trial before being argued on appeal is to give the reviewing court the benefit of the trial court's judgment on them. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) Because that purpose has been achieved and because the issue may involve substantial prejudice to the defendant, we will in our discretion consider it on its merits. *People v. Gray* (1977), 47 Ill. App. 3d 1026, 365 N.E.2d 501.

■■ The disposition of this cause is controlled by the case of *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897. In *Turner* the defendant's driver's license had been revoked but he obtained a new one by applying under a false name and falsely stating that his driving privilege had never been revoked. Our supreme court affirmed that conviction, holding that issuance of a new license did not restore the defendant's driving privilege because he obtained the license through fraud. The defendant in this cause also obtained his temporary driver's permit through fraud and thus that permit did not operate to restore his driving privilege. Defendant seeks to distinguish *Turner* because there the use of a false name totally prevented the State from determining whether the applicant's license had previously been revoked. Here, defendant argues, he supplied his own name and license number so that the State could have verified his licensing history before issuing the temporary permit. But the court in *Turner* did not base its decision on the extent to which the deception prevented verification by the State. The decision was based on the fact that deception was utilized. The defendants in *Turner,* and this cause, had the affirmative duty under statutory requirements to inform the State in their applications whether any prior license had been revoked or

---

[1] Although defendant's application was not available at the time of trial, the parties stipulated, on defendant's motion, that it would be part of the record, and it has been included in the record on appeal.

suspended. (Ill. Rev. Stat. 1977, ch. 95½, par. 6—106(b).) Instead they both chose to fraudulently conceal prior revocations. The fact that Turner's deception extended to his name as well as his driving record does not serve to distinguish the nature of his action from that of the defendant here. Both men sought to obtain the privilege to drive by the use of fraudulent applications, thus invalidating any privilege so obtained.

■■ ■ Nor do we find *Turner* distinguishable in the light of *People v. Papproth* (1977), 56 Ill. App. 3d 683, 371 N.E.2d 1097, cited by defendant for the first time on oral argument. In *Papproth* the defendant's license had been suspended several times when he cancelled his automobile insurance. When he reinstated the insurance his driving privilege was also restored. Subsequently his license was revoked, apparently because of a series of convictions for traffic offenses. When the defendant applied for a new license he informed the licensing examiner of the prior revocation, but indicated that the reasons for revocation were his problems with insurance and suspensions. A temporary permit was issued, and defendant was driving on the authority of that permit when he was stopped for speeding and then charged with driving while his license was revoked. The appellate court reversed the resulting conviction, finding *Turner* inapplicable because the defendant was not attempting to perpetrate a fraud, but rather was honestly confused as to the basis for the revocation. In dicta the court noted that defendant's disclosure of his prior revocation was sufficient to alert the examiner of the need to investigate further. The court also noted that there was no actual reliance by the Secretary of State, because even when his office subsequently learned of the reason for the revocation, they issued a new temporary license. In this analysis the court was applying the technical elements of fraud: the requirement of ordinary care in discovering the truth by one claiming fraud and actual reliance on the deception. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) We are not persuaded that the court in *Turner* intended to incorporate all of these requirements when they spoke of fraud by one applying for a driver's license. Indeed, the court in *Papproth* provided an accurate summary of the holding of *Turner*:

"* * * the court found that if one purposely conceals the fact of his license's previous revocation in order to mislead the authorities and prevent them from properly determining whether he should be granted a license, he may not interpose a license so procured as a defense to the charge of driving while his license was revoked."

(56 Ill. App. 3d 683, 688, 371 N.E.2d 1097, 1100.)

Obviously the defendant's behavior meets this test. His actions also establish all the elements referred to in *Papproth*. As we have noted, the defendant was under a statutory duty to disclose any prior license revocations. Additionally, as the application itself warns, any false

affirmation of fact by him could constitute perjury. (Ill. Rev. Stat. 1977, ch. 95½, par. 6—302.) Given these facts we do not find that reliance on defendant's affirmations by the Secretary of State was unreasonable. And actual reliance is established by the fact that when the Secretary of State subsequently learned of defendant's prior license revocation, his license was revoked. Thus, even under the strict standard suggested in *Papproth*, the defendant obtained his temporary permit by fraud and cannot rely on it as a defense. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P. J., and JOHNSON, J., concur.