THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VINCENT H. BARRIOS, Defendant-Appellant.

Second District   No. 2—84—0800

Opinion filed August 30, 1985.—Rehearing denied October 7, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

JUSTICE STROUSE delivered the opinion of the court:

The defendant was convicted after a jury trial of perjury in making a false statement on an application for a driver's license (Ill. Rev. Stat. 1983, ch. 38, par. 32—2), and of driving on a revoked license (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303). He was sentenced to concurrent terms of four years and 364 days respectively.

On April 23, 1984, the defendant, Vincent H. Barrios, was charged in a traffic complaint with the offense of driving while license revoked in violation of section 6—303 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303). On April 30, 1984, he was charged with the additional offense of perjury, when on March 13, 1984, he falsely affirmed an application for a driver's license in response to the following question: "Is your drivers [sic] license or privilege to obtain a license suspended, revoked, cancelled or refused in this or any other state?" and he stated "that his privilege to operate a motor vehicle in the State of Illinois was neither suspended or [sic] revoked at a time when he knew that his privilege to operate a motor vehicle or obtain a drivers [sic] license in the State of Illinois was suspended or revoked." (Ill. Rev. Stat. 1983, ch. 38, par. 32—2.) He entered a plea of not guilty to both charges and was tried before a jury on July 11, 1984.

The State's evidence showed that on April 23, 1984, a deputy sheriff, Dave Dyson, noticed the defendant, whom he knew, driving a car owned by Barbara Kellam. A radio check confirmed that the defendant's license had been revoked. After he was stopped, the defendant produced a driver's license issued March 13, 1984, which another radio check showed was valid. The defendant was ordered to the sheriff's office to check out the discrepancy. Defendant's original license, which had been revoked, had a birthdate of 1937, while the license issued on March 13, 1984, showed a 1941 birthdate.

A certificate of the Secretary of State showed the defendant's driving privileges were revoked on May 14, 1980. A proof of service of notification showed the period of revocation had been extended a year until May 20, 1982. His license was never reinstated pursuant to section 6—208(b) of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b)) after May 20, 1982. The license which was issued to him on March 13, 1984, was cancelled on May 26, 1984.

The facts leading up to the discrepancy reveal that on March 9, 1984, the defendant appeared before Wanda Stewart, a service clerk at the Chadwick Driver's License Facility, with a valid Iowa license. The defendant stated that he had moved into the State of Illinois from Iowa and wanted to get an Illinois license. The State required

that the defendant complete a written and vision test and submit a valid Iowa license. The original application given to him showed the date of birth as September 30, 1941. This was submitted as correct by the defendant in person and through his Iowa license. The application included the following question: "Is your driver's license or the privilege to obtain a driver's license revoked, cancelled or refused in this or any other State?" Defendant responded "no" and he wrote the word "no" on the application above the statement "I hereby affirm the information I furnished in this application for license is true to the best of my knowledge and belief." In response to question 4 on the application, defendant told the clerk he suffered from epilepsy. It therefore became necessary for him to obtain a physician's medical report. The defendant left the driver's license facility with all of the necessary information typed out on a form to be signed by his doctor. On May 13, 1984, he returned with the doctor's certificate. Wanda Stewart went over the questions with him again and the defendant then signed the application.

In March 1982, the defendant was charged with driving on a revoked license and no valid registration in case No. 83 CF 41, People v. Vincent Barrios. The same judge read from a transcript of that proceeding to the jury, over the defendant's objection, in the trial of the present case. The judge, who told the jury that it was offered for the sole and limited purpose of showing knowledge by the defendant of his status as a driver, read, in part:

"THE COURT: *** Do you have a driver's license in Illinois at this time?

Mr. Barrios: No. ***

THE COURT: Do you know your privilege to drive in the State of Illinois is revoked?

Mr. Barrios: No, I don't.

THE COURT: I'm telling you it is. I'd like to know how you perform a self-employed business without being able to operate a motor vehicle.

Mr. Barrios: I have hired a man that can do all the driving for me. He's what I'd call my junior partner. I pay him wages to do the job. He's been doing all the driving for me here. I have to have him do all the heavy work.

THE COURT: Do you have any idea why your license is revoked?

Mr. Barrios: I would imagine—I really don't know ***.

THE COURT: Could it be for a drunk driving conviction?

Mr. Barrios: That's what I said it could be for, OMVI convic-

tions. I do have my license back and I had my bond SR22 filed. I do have my driver's license back in Iowa.

THE COURT: Did you advise the Iowa authorities you were revoked in Illinois?

Mr. Barrios: Yes, I did. I had to do the whole thing over again. I had to get a special permit, take both tests over again and [pay] some kind of special fee.

THE COURT: The Secretary of State advises you are presently revoked in Illinois, your driving privilege.

Mr. Barrios: Then I'm totally unaware of that. I'm aware of it now."

In response to the State's case, the defendant took the stand, explained that his Iowa and Illinois driver's licenses had been revoked in 1980 as a result of convictions for operating a motor vehicle while intoxicated (OMVI), but that in 1983, he applied for and obtained the reinstatement of his Iowa license. He then believed his Illinois license was no longer revoked after 1982. He stated that neither the people at the driver's license facility nor the judge ever defined the term revocation for him. He went to the license facility with the intention of legally obtaining a driver's license and insisted he told the full story.

His testimony was supported by Barbara Kellam, who went with him to the driver's license facility. She testified that the manager of the facility, Mr. Queckboerner, told her there was a reciprocal agreement with Iowa whereby a reapplication in Iowa and payment of the reinstatement fee in Iowa would fulfil the requirements of Illinois law.

Doug Queckboerner and Wanda Stewart were recalled as rebuttal witnesses and asserted they were never told that the defendant's Illinois license had ever been revoked. They also denied telling the defendant or Barbara Kellam that reinstatement of his Iowa license fulfilled the requirements of Illinois law. The jury returned guilty verdicts on both charges.

■■ The defendant first argues that he was not proved guilty beyond a reasonable doubt because: (1) the revocation period ended May 20, 1982, two years before the perjurous statement; (2) he was never asked whether or not his license had ever been suspended, revoked, cancelled or refused; (3) he is not required to have his license reinstated following a period of suspension as opposed to the requirement that it be reinstated following a period of revocation; (4) it is not proper to expect lay persons to recognize the legal subtleties between revocation and suspension; and, (5) a person may not be convicted of

perjury for a truthful answer to a question subject to various interpretations.

Defendant cites several cases in support of his argument; however, none is applicable. It is true that the status of suspension and revocation are different. (*People v. Johnson* (1983), 115 Ill. App. 3d 987, 989.) It is also true that a defendant cannot be convicted of perjury for a truthful answer to a question subject to various interpretations. (*People v. White* (1974), 59 Ill. 2d 416, 420; *People v. Smith* (1979), 76 Ill. App. 3d 191, 198.) However, the questions and answers at issue must be interpreted in the context of what preceded and succeeded them. *People v. Watson* (1980), 85 Ill. App. 3d 649, 651.

The State established the defendant's knowledge of the falsity of his answers through circumstantial as well as direct evidence. (See *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 663.) His license had been revoked, and he had been officially informed of the revocation. Providing a different birthdate on the defendant's second license further exacerbated his guilty knowledge. In addition, on November 18, 1983, after the May 20, 1982, date, when he would have to refile, and during another court proceeding, he was advised that his license was revoked. He stated at that time, he now understood that his license was revoked. The defendant's testimony regarding his belief that an Iowa license automatically meant he need not refile was contradicted by the State employees' testimony. The jurors were entitled to reject the evidence that the conversations took place. (See *People v. Fuller* (1980), 91 Ill. App. 3d 922, 930.) Further, the defendant's admission served as evidence of his knowledge. (*People v. Husar* (1974), 22 Ill. App. 3d 758, 767.) The evidence here is sufficient beyond a reasonable doubt for conviction.

■ Defendant next argues that, under *People v. Klaub* (1985), 130 Ill. App. 3d 704, he had a valid Iowa license and was entitled to drive on that. Klaub, a resident of Illinois, had his license revoked in January 1974. In 1976, he moved to Indiana where he obtained a lawful license. In September 1983, he moved back to Illinois, where a month later he was arrested for driving on his revoked Illinois license. Although his Illinois license was revoked, he did have a valid Indiana license. (*People v. Klaub* (1985), 130 Ill. App. 3d 704, 705.) Section 6—102 of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—102) provides a nonresident, who becomes a resident of Illinois, may, during the first 90 days of his residence, drive on a valid license of another State. The Driver License Compact (Ill. Rev. Stat. 1983, ch. 95½, par. 6—700 *et seq.*) is incorporated as part of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, pars. 1—100, 1—117; *People v. Klaub* (1985), 130 Ill.

App. 3d 704, 705-06). *Klaub* is distinguishable from the present case since the record does not show the defendant makes any claim under this provision. The record also reveals that the defendant, on November 18, 1983, five months before he was arrested for driving while license revoked, was in the same court and admitted he was an Illinois resident.

■■■ The defendant, relying on *People v. Papproth* (1977), 56 Ill. App. 3d 683, then argues he could not be convicted for driving on a revoked license because he had been issued a driver's license after completion of the statutory requirements and the license was valid on its face. In *Papproth*, the defendant had moved to Illinois and within 90 days had been issued a temporary license but was advised that he needed proof of insurance to receive a permanent one. His conviction of driving under a revoked license was reversed because he had a valid temporary license. (56 Ill. App. 3d 683, 689.) That court, however, stated that the only elements necessary to prove the offense of driving a motor vehicle after the revocation of driving privileges are: (1) the act of driving a motor vehicle on the highways of this State; and, (2) the fact of the revocation of the driver's license or privilege. (56 Ill. App. 3d 683, 686.) The court further stated that section 6–208(b) of the Code (Ill. Rev. Stat. 1975, ch. 95½, par. 6–208(b)), which governs application for a license after revocation, makes it clear that if a license or privilege to drive has been revoked, there is no automatic restoration of the privilege. (*People v. Papproth* (1977), 56 Ill. App. 3d 683, 687.) Since the defendant in the present case did not comply with the provisions of section 6–208 of the Code, because he fraudulently obtained a license under a different birthdate when his license had been revoked, his privilege to drive was not restored. If a defendant "purposely conceals the fact of his license's previous revocation in order to mislead the authorities and prevent them from properly determining whether he should be granted a license," a defendant may not thereafter "interpose a license so procured as a defense to the charge of driving while his license was revoked." (56 Ill. App. 3d 683, 688, citing *People v. Turner* (1976), 64 Ill. 2d 183, 186-87.) We hold that applying for a license based on fraud invalidated the license issued on March 13, 1984.

■■ The defendant next argues that, under *People v. Finn* (1959), 17 Ill. 2d 614, the court erred in reading the transcript from his 1982 trial during the trial of the present case. In *Finn*, the prosecution called the court reporter as a witness at trial to read, in the presence of the jury, the notes of an appearance before the assignment judge which were made six weeks prior to trial. The purpose of this was to

refute the defendant's claim that the accused could not cooperate with counsel or understand the charges. However, these also contained the opinion of the assignment judge that the insanity defense was a sham. (17 Ill. 2d 614, 615-16.) The Illinois Supreme Court ordered a new trial, holding that it was error for the judge to convey to the jurors a personal opinion concerning a disputed question of fact. 17 Ill. 2d 614, 618.

The purpose of reading the record in the present case was similar to the *Finn* case. However, the trial judge did not give an opinion on an issue in the case. He read a transcript solely for the limited purpose of showing defendant's knowledge of his status as a driver. In that respect, it became an admission of knowledge that defendant's license was revoked and, further, that he could not drive in Illinois. The question of who should read the record to the jury was not objected to and is not an issue of this appeal.

■■ The defendant next argues that four years is too harsh a sentence. Specifically, the defendant argues that the imposition of a lengthy prison term for a perjury conviction is appropriate in aggravated circumstances, but not in the case of falsifying a driver's license application. Perjury is a Class 3 felony, with a potential prison term of not less than two years and not more than five years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(6).) Defendant argues that in the case of *City of Evanston v. Connelly* (1979), 73 Ill. App. 3d 890, 891-92, a 45-day sentence was imposed for the same kind of misconduct as in the present case. However, that case is distinguishable from this case because, although the defendant in *Connelly* could have been charged with perjury, he was only prosecuted for driving on a revoked license. (73 Ill. App. 3d 890, 893-94.) In addition, the defendant in the present case, contrary to the defendant in *Connelly*, had compiled a lengthy record of approximately 35 offenses, of which nine were driving without a valid license or on a revoked license. Moreover, the trial judge found that the defendant had perjured himself at trial.

The defendant finally argues that the sentence is too harsh in light of the trial judge's comments in his findings that the defendant perjured himself at the trial. There has been no abuse here, since a trial court has the authority to consider the defendant's perceived perjury at trial when sentencing him. *People v. Corrigan* (1985), 129 Ill. App. 3d 787, 795.

■■ A trial judge's sentence should not be altered unless it constitutes an abuse of discretion. "We have consistently held that it is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would

have balanced the appropriate factors differently if the task of sentencing had been ours." (*People v. Cox* (1980), 82 Ill. 2d 268, 280.) On this record, there appears to be no abuse of discretion in the sentence imposed. Moreover, other evidence in aggravation was entirely sufficient to justify the imposed sentence.

■ At the sentencing hearing on August 23, 1984, the court reviewed the defendant's entire record. It included nine offenses involving driving without a license or on a revoked license, three offenses for driving while under the influence, 15 for public drunkenness, five misdemeanors, five assorted traffic cases, and four felonies. On one of the felonies, the defendant served five years in the penitentiary. The court found that the violation here was very likely to recur considering the character and attitude of the defendant and his persistent nature to lie under oath. The court further found the defendant had no respect for the court or the court system; he was unlikely to comply with the law in the future; his incarceration presented no particular problem or hardship on dependents; and a penitentiary sentence was absolutely necessary to prevent violations by the defendant and to protect the public. We find no error in the trial proceedings or the sentence imposed.

For the foregoing reasons the opinion of the trial court is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.