(No. 62673

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VINCENT H. BARRIOS, Appellant.

*Opinion filed September 17, 1986.—Rehearing denied December 1, 1986.*

G. Joseph Weller, Deputy Defender, Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and James S. Williams, State's Attorney, of Mt. Carroll (Kenneth R. Boyle, William L. Browers, and Cynthia N. Schneider, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

Following a jury trial in the circuit court of Carroll County, the defendant, Vincent H. Barrios, was convicted of falsely stating on a driver's license application that his license or privilege to drive was not revoked, and of driving with a revoked license. (Ill. Rev. Stat. 1983, ch. 38, par. 32—2; Ill. Rev. Stat. 1983, ch. 95½, par. 6—303.) He was sentenced to concurrent terms of four years on the perjury conviction and 364 days for driving on a revoked license. The appellate court affirmed (136 Ill. App. 3d 197), and we granted the defendant's petition for leave to appeal under our Rule 315 (103 Ill. 2d R. 315).

The evidence shows that on April 23, 1984, Deputy Sheriff Dave Dyson observed the defendant, with whom he was acquainted, driving an auto, while in the company of Barbara Kellam. Believing that the defendant's license had been revoked, Dyson by car radio requested a license check on Vincent H. Barrios, with a birthdate of September 30, 1937. (The birthdate was on file at the sheriff's office.) When the check showed that the Secretary of State had revoked the license, Dyson stopped the defendant. He produced an Illinois driver's license issued

March 13, 1984, and Dyson then ran another license check using the file number stamped on the license the defendant exhibited. The check showed that license to be valid. Informing the defendant of the discrepancy, Dyson ordered him to proceed to the sheriff's office. The license the defendant produced, issued on March 13, 1984, showed September 30, 1941, as the defendant's birthdate.

At the sheriff's office, the defendant, who had been accompanied by Kellam, showed papers pertaining to driving privileges in Iowa. As they did not concern driving privileges in Illinois, Dyson rechecked the status of the defendant's driving privileges with the Secretary of State under the 1937 and the 1941 birthdates. That showed that the defendant had both a revoked and a valid license under the respective birthdates. The defendant was at that time charged only with the offense of driving with a revoked license in violation of section 6—303 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303).

When Dyson requested abstracts of the defendant's driver's licenses, the Secretary of State forwarded a certificate which stated that "an O[r]der of Revocation, was entered against the driving privileges of Vincent H. Barrios, DOB: September 30, 1937, *** on May 14, 1980, and said Revocation is in effect as of this date," that is, June 25, 1984. Accompanying the certificate was a copy of the order of revocation resulting from the defendant's conviction for driving under the influence of alcohol, and an order of extension stating that the May 14, 1980, revocation had been extended to May 20, 1982, due to the defendant's conviction for driving while his license was revoked. The defendant admits his license was never reinstated under the provision of section 6—208(b) of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b)).

On April 30, 1984, a criminal information was filed

against the defendant charging the offense of perjury (Ill. Rev. Stat. 1983, ch. 38, par. 32—2) for knowingly and falsely responding "No" to the following question on his March 13, 1984, driver's license application:

> "Is your drivers [*sic*] license or privilege to obtain a license suspended, revoked, cancelled or refused in this or any state? (If answer is 'yes', give date, reason, state, etc. below.)"

The record shows that Wanda Stewart, service clerk at the Chadwick Driver's Facility (the facility), testified that on March 9, 1984, the defendant applied for a driver's license. For identification, the defendant produced an Iowa driver's license bearing a birthdate of September 30, 1941, and an Iowa Department of Transportation form. Being unfamiliar with the Iowa form, Stewart consulted her supervisor, Doug Queckboerner, to insure that the defendant "was cleared in Iowa." After doing so, Stewart asked the defendant whether his name and birthdate as shown on the Iowa license were correct; the defendant responded "Yes." Stewart entered the information on the application. Stewart then proceeded to process the application, beginning with asking the defendant whether his license or privilege to obtain a license was suspended or revoked. The defendant replied "No." The application, however, could not be completed until the defendant had a physician complete a State medical form because he had stated that he suffered from epilepsy. On March 13, the defendant returned to the facility with the medical form completed. After answering the remaining questions, the defendant signed the application at Stewart's request, affirming the correctness of the information he had provided. The defendant signed the application directly under the portion of the application which read:

> "I HEREBY AFFIRM THAT THE INFORMATION I HAVE FURNISHED IN THIS APPLICATION FOR LI-

CENSE IS TRUE TO THE BEST OF MY KNOWL-
EDGE AND BELIEF."

The State, as evidence of the defendant's knowledge that his license and privilege to obtain a license were revoked, introduced a transcript from a November 1983 proceeding in Illinois in which the defendant was charged with driving on a revoked license. The judge read the following portion of the transcript to the jury, overruling the defendant's objections that the transcript was "highly prejudicial [and] *** not necessarily probative," and improperly introduced into evidence his commission of prior crimes.

"THE COURT: You are charged on March of '82 with driving while your license was revoked and no valid registration ***. Do you have a driver's license in Illinois at this time?

MR. BARRIOS: No, I have a—I don't—I have an Illinois driver's license.

THE COURT: Do you know your privilege to drive in the State of Illinois is revoked?

MR. BARRIOS: No, I don't.

THE COURT: I'm telling you it is. ***

* * *

THE COURT: Do you have any idea why your license is revoked?

MR. BARRIOS: I would imagine—I really don't know unless it was—

THE COURT: Could it be for a drunk driving conviction?

MR. BARRIOS: That's what I said it could be for—OMVI [operating a motor vehicle while intoxicated] conviction. I do have my license back and I had my bond SR22 filed. I do have my driver's license back in Iowa.

THE COURT: Did you advise the Iowa authorities you were revoked in Illinois?

MR. BARRIOS: Yes, I did. I had to do the whole thing over again. I had to get a special permit, take both tests over again, and some kind of special fee.

THE COURT: The Secretary of State advises you are presently revoked in Illinois, your driving privilege.

MR. BARRIOS: Then I'm totally unaware of that. I'm aware of it now."

The judge then informed the jury that the transcript "was offered for the sole and limited purpose of showing knowledge of the defendant of his status as a driver."

The defendant testified that in 1980 his Illinois and Iowa driver's licenses had been revoked upon convictions for driving while intoxicated; however, he said, in 1983 he obtained an Iowa driver's license. He stated that in 1981 he had received a notice from the Secretary of State that his Illinois license was revoked; but he believed that such revocation was in effect only until sometime in 1982, after which time he thought he was eligible to reapply for an Illinois license. He testified that in March of 1984 he applied at the facility for an Illinois driver's license. He said he informed Wanda Stewart that his Illinois driver's license had been revoked earlier, but that he now had a valid Iowa license. After checking with her supervisor, Stewart told him that as long as he met the requirement for reinstating his license in Iowa, that was sufficient to reinstate his Illinois license. Furthermore, he testified that for a number of years he did not know that 1941 was his year of birth. While in Iowa he obtained a birth certificate and that was the reason that his Iowa license bore 1941 as the year of birth. However, when committed to jail in Illinois, he gave 1937 as the year of birth because, he said, it was immaterial to him which year was indicated.

Kellam corroborated the defendant's testimony that Stewart and Queckboerner informed him that possession of a valid Iowa license would qualify him to apply for an Illinois license.

Stewart and Queckboerner, however, denied that the defendant had informed them that his Illinois license had

been revoked, and that if he had done so, further investigation would have been required. Too, both denied telling the defendant that having a valid Iowa license was sufficient to obtain a license in Illinois.

Considering the evidence, we judge that the defendant was shown to have been guilty of perjury beyond a reasonable doubt. Perjury is committed when a person, under oath or affirmation required by law, "makes a false statement, material to the issue or point in question, which he does not believe to be true." (Ill. Rev. Stat. 1983, ch. 38, par. 32—2(a); *In re Obartuch* (1944), 386 Ill. 323, 332; *People v. Toner* (1977), 55 Ill. App. 3d 688, 692.) A conviction for perjury will not lie when a person truthfully answers a question subject to various interpretations. (*People v. White* (1974), 59 Ill. 2d 416, 420; *People v. Watson* (1980), 85 Ill. App. 3d 649, 651.) A question requiring a yes or no answer "must be stated in such a precise way as not to require interpretation or construction by those who are required to answer them under oath." *People v. White* (1974), 59 Ill. 2d 416, 421.

The question asked of the defendant concerning revocation is plainly stated and requires no interpretation. An applicant is called upon simply to answer yes or no to the question whether either his license or privilege to obtain a license is suspended or revoked.

The record properly shows that the defendant's license and privilege to obtain a license were revoked at the time of application, and that the defendant knew of that revocation. Once a person's license or privilege to drive is revoked, it may not be automatically restored. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391; *People v. Turner* (1976), 64 Ill. 2d 183, 186.) Under the Code, reinstatement of a license or privilege may be effected only in the following manner:

"Any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked

shall not be entitled to have such license or permit or privilege renewed or restored. However, such person may make application for a license as provided by Section 6—106 of this Act:

> (1) If the revocation was for a cause which has been removed, at any time; or

> (2) After the expiration of 1 year from the date of revocation, and upon payment of the reinstatement fee ***.

In either event, the Secretary of State shall not issue such license unless and until he is satisfied after investigation of such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b).)

Section 6—106(b) in part provides:

> "Every application shall state the name, social security number, zip code, date of birth, sex, and residence address of the applicant; briefly describe the applicant; state whether the applicant has theretofore been licensed as a driver, and, if so, when and by what state or country, and whether any such license has ever been cancelled, suspended, revoked or refused, and, if so, the date and reason for such cancellation, suspension, revocation or refusal; shall include an affirmation by the applicant that all information set forth is true and correct; and shall bear the applicant's signature ***." Ill. Rev. Stat. 1983, ch. 95½, par. 6—106(b).

The evidence showed that, by certification of the Secretary of State, a notice of revocation and an order of extension were mailed to the defendant on May 8, 1980, and July 14, 1981, respectively. The notice of revocation read:

> "*** IT IS HEREBY ORDERED that any and all Illinois drivers licenses or permits issued to such person, the privilege of obtaining a license as well as the privilege of operating a motor vehicle in this State, be and are hereby REVOKED, effective this date, [May 14, 1980] ***."

The order of extension stated:

"*** IT IS HEREBY ORDERED that you will be ineligible to apply for the restoration of your driving privileges for an additional period of one year or until May 20, 1982."

The defendant admitted receiving both of these documents.

Considering the plain language of the notice of revocation and the order of extension, the defendant's admission that he received these documents, and his admission that his license was not reinstated according to the requirements of the Code, we judge that the record clearly shows that the defendant, at the time of application, knew that his license and privilege to obtain a license were revoked. The truthful answer to the application's question was not no, but yes.

The defendant next contends that he was denied a fair trial because the trial court read into evidence the transcript from the November 18, 1983, proceeding. He argues on appeal that admission of the transcript denied his right to confront witnesses; that the transcript was inadmissible hearsay; and that the judge's reading of the transcript was prejudicial, in that a jury is readily susceptible to being influenced by the trial judge (citing *People v. Santucci* (1962), 24 Ill. 2d 93, 99).

At trial the defendant objected to the admission of the transcript on the grounds that the transcript was highly prejudicial, not probative, and made inappropriate reference to two prior charges against him. Objections at trial on specific grounds, of course, waive all other grounds of objection. (*People v. Jones* (1975), 60 Ill. 2d 300, 307.) The defendant has waived the right to object on the grounds he now asserts on appeal.

In any event, there was no error in the admission of the transcript. The defendant's admission of receiving

the orders of revocation and extension demonstrated clearly that at the time of application he knew that his license and privilege to obtain a license were revoked. We would observe that the trial court carefully instructed the jury that the transcript was admitted into evidence solely for the purpose of showing the defendant's knowledge as to the status of his driving privileges. It should be added that the defendant, on oral argument and in his briefs, admits here that he did not take the steps under the Code to reinstate his license.

The defendant argues that the trial court abused discretion in imposing a four-year sentence on his perjury conviction. He maintains that a "lengthy" sentence is appropriate "only in aggravated circumstances such as giving false testimony in major trials, not for being untruthful on a driver's license application." In arguing that the sentence is disproportionate to the offense, he states, by way of comparison, that the sentence he received for armed robbery in 1965 was five years and that his other convictions resulted in fines or jail terms of 30 days or less.

The defendant relies upon *City of Evanston v. Connelly* (1979), 73 Ill. App. 3d 890, where the defendant was sentenced to 45 days in jail for driving on a revoked license obtained by falsely stating his driving privileges had never been revoked or suspended. That decision is distinguishable. The defendant in *Connelly* was convicted only of driving with a revoked license, not of perjury. Driving with a revoked license is a Class A misdemeanor, calling for a sentence of "any term less than one year" (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—3(a)(1)); perjury is a Class 3 felony, calling for a sentence of "not less than 2 years and not more than 5 years" (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(6)). Too, in *Connelly* there is no mention of a prior criminal history. The defendant here has a remarkable record: 10

convictions for driving either without a valid license, no license, or with a revoked or suspended license, petty theft, grand larceny, two assault convictions, numerous intoxication offenses, armed robbery, embezzlement, and two convictions for driving under the influence of alcohol. Lastly, the defendant, as the trial court found, lied persistently under oath.

It has been consistently held by this court that "where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the legislature, that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of article II of the [1870] Illinois constitution which requires that all penalties should be proportioned to the nature of the offense. The trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review." *People v. Fox* (1971), 48 Ill. 2d 239, 251-52, citing *People v. Hampton* (1969), 44 Ill. 2d 41, and *People v. Taylor* (1965), 33 Ill. 2d 417; Ill. Const. 1970, art. I, sec. 11.

Our affirmance of the defendant's conviction for perjury, and his admitted failure to have his license reinstated as required by the Code, make it unnecessary to address the defendant's contention that his conviction for driving while his license was revoked should be reversed. See *People v. Turner* (1976), 64 Ill. 2d 183, 187 (this court held that a revoked license is restored only upon compliance with the provisions of the Code and not by fraudulently reapplying for a license under an assumed name); *City of Evanston v. Connelly* (1979), 73 Ill. App. 3d 890, 892-93 (the appellate court upheld the defendant's conviction for driving while his license was revoked on the ground that in applying for a new license

278

the defendant falsely stated that his driving privileges had never been revoked or suspended).

For the reasons given, the judgment of the appellate court affirming the trial court is affirmed.

*Judgment affirmed.*