**David GRIEPENSTROH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 74A05–9303–CR–85.

Court of Appeals of Indiana,
First District.

Feb. 28, 1994.

Transfer Denied May 16, 1994.

Terry Noffsinger, Noffsinger, Price, Bradley & Shively, Evansville, for appellant-defendant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

David Griepenstroh appeals from his conviction for Perjury, a Class D felony.[1] He contends that the evidence was insufficient to support his conviction because the State failed to prove that he "knowingly" signed a false statement. We agree and reverse.

1. IND.CODE § 35-44-2-1.

## ISSUE

Griepenstroh presents five issues for our review. Because we conclude that one issue is dispositive, we address only the following question: whether there was sufficient evidence to support Griepenstroh's conviction for perjury.

## FACTS

Griepenstroh was a Spencer County Commissioner. In April of 1989, the County Commissioners contracted with Indiana and Michigan Power Company ("I & M") for the disposal of a large quantity of I & M's rock, sand and gravel known as "aggregate." I & M offered to donate aggregate to Spencer County if the County would remove and haul it away at its own expense. The contract also required that a "coordinator" be present and oversee operations at the I & M removal site.

The Commissioners advertised for hauling contractors to submit sealed bids and, on June 5, 1989, awarded the contract to Tom Shelton. One of the specifications of the hauling contract required Shelton to execute an agreement with the union currently working with I & M. On June 8, 1989, three days after the contract was awarded, Shelton and Griepenstroh went to the union hall to meet with Jim Manning, the union business manager, to discuss the hauling job. Shelton asked Griepenstroh to accompany him because Shelton was a non-union employer and Griepenstroh was a 20-year member of the union. Shelton and Manning signed an agreement that day which provided that if Shelton needed any additional employees for the job, those employees would be union members.

During their meeting on June 8, Shelton also told Manning that he wanted Griepenstroh to be the project coordinator. Manning did not initially agree to Shelton's proposal. However, before Shelton and Griepenstroh left the meeting, Manning agreed to select Griepenstroh as the coordinator. Griepenstroh then asked Manning to send him a "referral slip" to indicate formally that he had been hired as coordinator. On June

14, Griepenstroh called Manning and again asked that a referral slip be sent because Griepenstroh needed it for a conflict of interest disclosure. Although the contract for hauling aggregate had been awarded to Shelton on June 5, the Commissioners did not sign the contract with Shelton until the June 16, 1989 Commissioner's meeting. After Griepenstroh returned home from that meeting, he found in his mail a union referral slip which directed him to report for work on June 20.

Griepenstroh immediately contacted one of the Spencer County Attorneys, Francis Lueken, and told him that he had received a referral slip and would be the coordinator for the hauling project. Thereafter, Lueken and Rick Wetherill, the other County Attorney, researched whether there was a possible conflict of interest in Griepenstroh's employment as the coordinator and his position as a Commissioner. After also conferring with the Attorney General's office and the State Board of Accounts, the County attorneys concluded that no conflict existed under the Indiana Conflict of Interest statute. However, they recommended to Griepenstroh that he sign a conflict of interest notice "to err on the side of caution." · Record at 1376.

Wetherill then prepared a draft Formal Notice of Possible Conflict of Interest (the "Notice"). On June 19, before the Commissioners' meeting that day, Griepenstroh went to Wetherill's office and reviewed a number of documents, including the Notice. After Griepenstroh left Wetherill's office, Lueken reviewed the Notice and suggested changes, which were then incorporated in a final document. Lueken presented the Notice during the late stages of the Commissioner's meeting and gave each of the three Commissioners a copy. Lueken did not review with Griepenstroh, or the other Commissioners, any of the changes made on the original version but reviewed only the "high points" of the Notice at the meeting. Record at 1369. Leuken did not read it verbatim. Griepenstroh then signed the Notice during the meeting but did not read it because he had already reviewed it and often signed many documents at the Commissioners' meetings.

Griepenstroh worked as the coordinator on the I & M project from June 1989 to February 1990, when the project was stopped. Subsequently, allegations were made against Griepenstroh concerning his participation in the project. On December 9, 1991, Griepenstroh was indicted by a grand jury and charged with two counts of bribery, and one count each of conflict of interest, theft, and perjury. The trial court dismissed one count of bribery and the theft charge at the close of the State's evidence. The remaining counts went to the jury. On October 15, 1992, the jury acquitted Griepenstroh on the second count of bribery and on the conflict of interest charge, but found him guilty of perjury. He was sentenced to one and one-half years imprisonment but the sentence was suspended to one and one-half years of probation, 500 hours of community service and a $1000 fine. Griepenstroh appeals his conviction for perjury.

## DISCUSSION AND DECISION

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Landress v. State* (1992), Ind., 600 N.E.2d 938, 940. Instead, we look to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* at 940. If there exists substantial evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the verdict. *Clemens v. State* (1993), Ind.App., 610 N.E.2d 236, 243.

Under Indiana Code § 35–44–2–1, a person commits perjury if he "makes a false, material statement under oath or affirmation knowing the statement to be false or not believing it to be true." The relevant provisions of the Notice, upon which the State charged that Griepenstroh committed perjury, are contained in paragraphs "M" and "P" as follows:

"M. I represent that neither, Indiana Michigan Power Company, County Commissioners, nor Shelton Excavating selected or designated me for the job.

\*　　\*　　\*　　\*　　\*　　\*

P. I do not make this disclosure prior to the signing of the contract, since I had no knowledge that I would be selected by the Union Hall to fill this position until after the contract was signed. However, I make this disclosure one (1) business day after I received notice from the Union Hall to report to work at the Plant site."

Record at 151–52. Griepenstroh contends that the evidence was insufficient to support his conviction for perjury because the State failed to prove either (1) that the statements contained within the Notice were false or (2) that he "knowingly" made a false statement when he signed the Notice.

### Paragraph "M"

■ First, the State contends that paragraph "M" contains a false statement because "Shelton Excavating, via Tom Shelton, specifically selected and designated Defendant for the position of coordinator during a meeting with the union." Brief of Appellee at 11. The State maintains there was sufficient evidence to show that paragraph "M" was false because Shelton told Manning in Griepenstroh's presence that he wanted Griepenstroh to be the coordinator; Griepenstroh asked that Manning send him a referral slip; and Shelton introduced Griepenstroh to others as the coordinator. Griepenstroh admits these factual assertions but argues that they are irrelevant because, pursuant to the County's contract with Shelton Excavating, only the *union* had authority to select the coordinator. While it is apparent from the record that Griepenstroh had a definite interest in seeking the coordinator's position, we agree that the State's assertions are irrelevant because we are presented with a narrow question of whether Griepenstroh committed perjury, not whether he had a conflict of interest, a charge for which he was acquitted.

The terms "selected" and "designated," as they are used in paragraph "M," are synonymous. "Select" is defined as, "chosen in preference to another or others, choose, or pick out." *See Webster's New World Dictionary* 1291 (2nd ed. 1982); *Black's Law Dictionary* 1525 (4th ed. rev. 1968). Likewise, "designate" is defined as, "point out, indicate,

name, appoint, or set apart." *See Webster's* at 382; *Black's* at 533.

As the definitions suggest, the meaning of "select" and "designate" are also ambiguous, as there is no single, definitive meaning for those terms. Griepenstroh narrowly construes the words to mean that neither I & M, the Commissioners, nor Shelton Excavating actually chose or appointed him because none of them had authority to place him in the coordinator's position. However, the State broadly construes "selected or designated," as used in paragraph "M," to mean merely to name, point out or prefer. Both interpretations are equally plausible.

In a charge for perjury, "the questions and answers [in the statement] at issue must be interpreted in the context of what preceded and succeeded them." *People v. Barrios* (1985), Ill.App., 136 Ill.App.3d 197, 90 Ill.Dec. 869, 483 N.E.2d 16, 19, *aff'd,* (1986), Ill., 114 Ill.2d 265, 102 Ill.Dec. 522, 500 N.E.2d 415. A perjury conviction may not be sustained by lifting a statement of the accused out of its immediate context so that it has a meaning "wholly different than that which its context clearly shows." *Van Liew v. United States* (5th Cir.1963), 321 F.2d 674, 678; *Fotie v. United States* (8th Cir.1943), 137 F.2d 831, 842. Further, "the untruthful import of an allegedly perjured statement should be direct and clear, not implied or suggested." *Commonwealth v. Coleman* (1985), 20 Mass.App. Ct. 541, 481 N.E.2d 523, 529, (citing *Bronston v. United States* (1973), 409 U.S. 352, 359, 93 S.Ct. 595, 600, 34 L.Ed.2d 568). The dispositive question is whether the words involved, read in their immediate context, are susceptible to more than one reasonable interpretation and "whether the witness' answer truthfully responds to his reasonable interpretation of the words." *See People v. Wills* (1978), 71 Ill.2d 138, 15 Ill.Dec. 753, 374 N.E.2d 188, 191.

Taken in the context of the Notice, Griepenstroh's interpretation of the critical terms "selected or designated" is reasonable. The evidence is uncontroverted that only the union had actual authority to select or designate the union member who was to be in a supervisory position such as coordinator. Manning testified that:

"there are very few collective bargaining agreements where the supervisor or Foreman are selected by the Union, ok. We have an exclusive agree[ment], hiring hall and we have, have that in it. It's an old negotiated paragraph in our agreement and it still stands yet to date. So yes we are one of the very few, if not the only one that refer Foremans, not Superintendents or in that group, but the ones that maintain the Union membership.

\* \* \* \* \* \*

Our, in that same agreement, it states that the Foreman will be mutually agreed on between the Company and the Union. So that might explain a little bit why the, the negotiation or the mutually, when we mutually reached an agreement on whether Mr. Griepenstroh would be the 'Grade Foreman', 'Coordinator', whatever it may be."

Record at 610–11. By signing the Notice of Conflict of Interest, Griepenstroh was attempting to show that none of the parties who had an interest in the contract improperly employed him as coordinator. Indeed, the Notice was prepared on Griepenstroh's behalf by Lueken and Wetherill, the County attorneys, to "err on the side of caution."

Further, the State's interpretation of these words in paragraph "M" is at odds with its interpretation of these words in paragraph "P." As we discuss below, in paragraph "P" Griepenstroh states, "I had no knowledge that I would be *selected by the Union Hall* to fill this position." Record at 152 (emphasis added). A conviction under paragraph "P" rests upon the factual determination that the union "selected" Griepenstroh. However, a conviction under paragraph "M" rests upon the factual determination that I & M, the County Commissioners or Shelton Excavating "selected or designated" him. Griepenstroh's interpretation reconciles the use of those terms in both paragraphs while the State's interpretation requires the trier of fact to make inconsistent findings. Thus, the State's interpretation renders the Notice internally inconsistent and further supports our conclusion that Griepenstroh's understanding of the Notice is reasonable.

■ Therefore, while Shelton expressed his preference that Griepenstroh be the coordinator, and Griepenstroh had knowledge of Shelton's preference, the evidence shows that only the *union* had the ultimate authority and could have "selected or designated" Griepenstroh as the coordinator, which it did. The statement in paragraph "M," taken in its context, is not false but merely ambiguous. The statement is subject to more than one reasonable, plausible meaning, and Griepenstroh relied upon his reasonable understanding of those words. This is not the stuff of perjury. Thus, we hold that a conviction for perjury may not lie when a person truthfully answers a question subject to more than one reasonable interpretation or signs an ambiguous statement. *See Barrios,* 483 N.E.2d at 19. Paragraph "M" cannot support Griepenstroh's conviction because the evidence is insufficient as a matter of law to prove the statement was false beyond a reasonable doubt.

### Paragraph "P"

■ Next, we must look to paragraph "P" to determine whether it contains a false statement and whether Griepenstroh had knowledge of its falsity. The State asserts that the following statement in paragraph "P" is false: "I had no knowledge that I would be selected by the Union Hall to fill this position until after the contract was signed." Griepenstroh responds, and it is uncontroverted, that he did not have formal notice of his selection by the union until he received the referral slip on June 16, 1989, after he had returned home from the Commissioner's meeting at which the Shelton contract was signed.

However, the date Griepenstroh finally received the referral slip does not control, and we cannot agree with Griepenstroh's contention that the State did not present evidence that he "actually knew of his selection at the time of the signing." Reply Brief at 4. The evidence shows that Griepenstroh was aware that referral slips were no longer required to inform a union member of employment, but that he nevertheless asked Manning, when they met on June 8, to send a referral slip to him. Further, Griepenstroh subsequently

called Manning on June 14 and again requested that he send a referral slip to include in Griepenstroh's conflict of interest disclosure. This request obviously occurred before Griepenstroh notified Lueken that he had received the referral slip and before Lueken began to research a possible conflict of interest. Most importantly, Manning testified that before Shelton and Griepenstroh left their meeting on June 8, he had agreed on behalf of the union that Griepenstroh would be the coordinator. Thus, as it was signed on June 16, paragraph "P" of the Notice contains a false statement because Griepenstroh had knowledge, as of June 8, that he "would be selected by the Union Hall."

Although we have concluded that paragraph "P" contained a false statement, we must still consider whether Griepenstroh had knowledge, at the time he signed the Notice, that a statement contained therein was false. The State concedes that it did not present direct evidence of Griepenstroh's intent to the jury but argues that the jury could have "reasonably inferred" that Griepenstroh possessed the required intent because (1) he did not inform Lueken or Wetherill, either before or after signing the Shelton contract, that he had attended a meeting with Shelton and Manning on June 8, and (2) he heard the Notice discussed at the June 19 Commissioner's meeting and then signed it under oath. Brief of Appellee at 13. Griepenstroh counters that the uncontroverted evidence shows the meaning of the Notice was materially changed between the time he reviewed it in Wetherill's office and the time he signed the Notice at the Commissioner's meeting, and that he was not advised by Lueken or Wetherill of that change.

The evidence shows that Wetherill drafted the Notice and reviewed it with Griepenstroh on June 19, 1989. At that time, paragraph "P" of the Notice stated:

"P. I do not make this disclosure prior to the *awarding* of the contract, since I had no knowledge that I would be selected by the Union Hall to fill this position until after the contract was *awarded*. However, I make this disclosure one (1) business day

after I received notice from the Union Hall to report to work at the Plant site."

Record at 1296 (emphasis added). After Griepenstroh left Wetherill's office, Lueken then reviewed the Notice and made a number of suggested changes and notations on the document. His notations included circling on the original copy the words "awarding" and "awarded." According to Lueken, he and Wetherill discussed Lueken's suggestions and made certain modifications to the Notice, including substituting the words "signing" and "signed" for "awarding" and "awarded." Those changes materially altered the meaning of paragraph "P" because Griepenstroh knew of his selection as coordinator after the contract was *awarded* but before it was *signed.*

Paragraph "P" of the Notice was not false when Griepenstroh reviewed it in Wetherill's office. It is undisputed that Lueken made changes which materially altered the Notice, and Lueken testified that Griepenstroh "did not see the document [the Notice] again in its revised, final form until I removed it from my file folder later that afternoon, and passed it, and reviewed the high points of the document with the Commissioner's...." At the meeting, Lueken did not inform Griepenstroh of the changes but merely read the "high points" of the Notice to the Commissioners and did not read the Notice verbatim. There is no evidence concerning what the "high points" included. Griepenstroh testified that he did not read the Notice again because he had read it just hours before the meeting, he often read and signed a number of documents at each meeting, and he signed the Notice at the end of a lengthy meeting. Griepenstroh "assumed it was the same document." Brief of Appellant at 27. It is not perjury where a defendant "carelessly swore to a fact that if he had been more cautious he would have learned to be false." *See Gardner v. State* (1951), 229 Ind. 368, 376, 97 N.E.2d 921, 924–25. One's "negligence or carelessness in coming to a conclusion without taking pains to ascertain the truth of the facts to which he swears does not make his oath corrupt," or false. *Id.* at 376–77, 97 N.E.2d at 925.

The State failed to present any evidence which refutes the testimony of either Griepenstroh or Leuken, his attorney, that Griepenstroh did not know the statement in paragraph "P" had been modified and, as modified, was false. The State asks us to infer Griepenstroh's intent from the fact that he voluntarily signed the Notice under the penalties for perjury. Such an inference is not supported by the evidence. We conclude, as a matter of law, that the evidence presented by the State on this question could not prove, beyond a reasonable doubt, that Griepenstroh knew he was signing a false statement. Therefore, the evidence is insufficient with respect to paragraph "P."

Griepenstroh's conviction must be reversed because the State failed to prove that the statements contained within the Notice were false or that Griepenstroh knowingly made a false statement when he signed the Notice.

The judgment is reversed.

SHARPNACK, C.J., and BAKER, J., concur.