# In the Iowa Supreme Court

No. 24–0027

Submitted November 13, 2024—Filed March 7, 2025

**Marlene Banwart** and **Richard Banwart,**

Appellants,

vs.

**Neurosurgery of North Iowa, P.C., David Beck,**
and **Thomas Getta,**

Appellees.

Appeal from the Iowa District Court for Cerro Gordo County, Colleen Weiland, judge.

The plaintiffs appeal from the district court's ruling dismissing their medical malpractice action as time-barred, and the defendants cross-appeal from the district court's ruling that the plaintiffs substantially complied with Iowa's certificate of merit affidavit statute. **Reversed on Cross-Appeal and Case Remanded with Instructions.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDonald, and May, JJ., joined. McDermott, J., filed a dissenting opinion, in which Oxley, J., joined.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellants.

Frederick T. Harris, Ryan P. Tunink, and Theodore T. Appel (until withdrawal) of Lamson Dugan & Murray LLP, West Des Moines, for appellees David Beck and Neurosurgery of North Iowa, P.C.

Desirée A. Kilburg and Paul J. Esker of Bradley & Riley PC, Iowa City, for appellee Thomas Getta.

**Waterman, Justice.**

All parties in this case have appealed from the district court's rulings on cross-motions for summary judgment. The plaintiffs filed this medical malpractice action in 2020 over two years after the surgery and postoperative care at issue. Our court's emergency supervisory orders had temporarily tolled the statute of limitations for seventy-six days during the COVID-19 pandemic. The plaintiffs served certificates of merit that their experts "affirmed" without signing under oath or "under penalty of perjury." Two and a half years later, but still within the dispositive motion deadline, the defendants moved for summary judgment on two grounds: (1) the action was barred by the two-year statute of limitations in Iowa Code section 614.1(9)(*a*) (2020) due to the invalidity of our supervisory orders, and (2) the unsworn certificates of merit did not substantially comply with the affidavit requirement of Iowa Code section 147.140. The district court ruled that the certificates substantially complied with section 147.140, but the action was time-barred because our supervisory orders could not toll the statute of limitations. The plaintiffs appealed the resulting summary judgment against them, and the defendants cross-appealed the denial of their motion. We retained the case.

On our review, we bypass the statute of limitations issues and decide the case on the cross-appeal. First, we apply our cases interpreting section 147.140 to hold that the certificates in this case did not substantially comply with the statute's affidavit requirement. *See Miller v. Cath. Health Initiatives–Iowa Corp.*, 7 N.W.3d 367, 373 (Iowa 2024); *Shontz v. Mercy Med. Ctr.–Clinton, Inc.*, No. 23–0719, 2024 WL 2868931, at *1 (Iowa June 7, 2024) (per curiam). Second, we reject the plaintiffs' claim that section 147.140 is void for vagueness. Third, we reject the plaintiffs' claim that the defendants waived their rights under section 147.140 by waiting two and a half years to challenge the certificates. We

remand the case for an order granting the defendants' motions for summary judgment under section 147.140(6).

## I. Background Facts and Proceedings.

Marlene Banwart and her husband Richard Banwart live in West Bend. Marlene has a long history of back pain. She had spinal surgery in 1985, and two more surgeries about five years later. In the summer of 2018, she sought treatment with Dr. David Beck at Neurosurgery of North Iowa, P.C. (NNI) in Mason City. On July 24, Dr. Beck performed a lumbar laminectomy on Marlene at Mercy Medical Center–North Iowa. Based on her prior surgeries, Marlene "knew what to expect" about her pain and limitations after the laminectomy. Her postoperative pain this time greatly exceeded her expectations. On July 27, Marlene was transferred from Mercy to a skilled care center in West Bend. Dr. Thomas Getta evaluated her there on July 31. Dr. Getta did not refer Marlene for further evaluation or surgery. Her pain and symptoms persisted. On August 14, Marlene was seen in the local emergency room complaining of double vision, glossy eyes, and chronic back pain. She returned to Mercy's Mason City hospital. The next day, an MRI revealed an epidural hematoma, a complication from her July 24 laminectomy. Dr. Beck performed emergency surgery that day to evacuate the epidural hematoma. Marlene remained hospitalized at Mercy until August 23, when she was transferred to a rehabilitation facility in Emmetsburg.

More than two years later, on October 19, 2020, the Banwarts filed this medical malpractice action against NNI, Dr. Beck, and Dr. Getta. Our court's supervisory orders that year tolled the statute of limitations by seventy-six days in response to the COVID-19 global pandemic. The Banwarts alleged Dr. Beck breached the standard of care in his July 24, 2018 surgery and postoperative care, and sought recovery from him and NNI as his employer. The Banwarts

further alleged that Dr. Getta was negligent in his postoperative evaluation and that his failure to refer Marlene for a neurological consultation a week later resulted in her permanent injuries. Dr. Beck and NNI filed a joint answer and Dr. Getta filed a separate answer. All defendants denied negligence and pleaded the defense of the statute of limitations.

On November 20, 2020, the Banwarts filed two certificates of merit. Each certificate used the district court case caption and was titled, "Certificate of Merit Affidavit." One certificate was directed against Dr. Beck and signed by Dr. Christopher Koebbe, a neurosurgeon in Florida; the other was directed against Dr. Getta, and signed by Dr. Kevin Ferentz, who practices family medicine in Maryland. Each certificate begins: "In compliance with Iowa Code Section 147.140, [the expert] does hereby affirm and state, as follows . . . ." A date and signature line appears at the end of each certificate, which was dated and signed by the expert. No jurat (notarization) or other signature by a witness appears on either certificate. Neither certificate includes a statement that it was signed under oath or under penalty of perjury. The Banwarts never filed any other certificates of merit. No defendant challenged the certificates as deficient in 2020, 2021, or 2022, and the parties proceeded with discovery. By agreement of the parties, the district court's scheduling orders set the dispositive motion deadline at sixty days before trial. The trial date was continued several times.

On July 7, 2023, over two and a half years after the Banwarts filed their certificates of merit, the defendants jointly filed motions for summary judgment. At that time, the jury trial was scheduled to commence on October 1, 2024, so the defendants' motions were filed more than a year before the district court's deadline for dispositive motions. One motion sought summary judgment on the grounds that the action was barred under the two-year statute of limitations in Iowa Code section 614.1(9)(*a*). The defendants argued that our court's COVID-19

supervisory orders tolling the statute of limitations were ineffectual because they violated the separation-of-powers doctrine. Alternatively, they argued that even if the supervisory orders were constitutional, the Banwarts missed the extended deadline because October 19, 2020, is two years and eighty-seven days after the July 24, 2018 surgery. The Banwarts argued in resistance that the supervisory orders tolling the limitations period were constitutional and that the statute of limitations did not begin to run until the MRI report on August 15, 2018, so that the October 19, 2020 lawsuit was timely filed within the seventy-six days tolled under the supervisory orders.

The other motion for summary judgment was based on Iowa Code section 147.140(6). The defendants argued that the Banwarts failed to substantially comply with section 147.140's affidavit requirement because the certificates were not signed under oath or under penalty of perjury. The Banwarts argued in resistance that their certificates of merit complied or substantially complied with section 147.140's "oath" requirement because they were "affirmed" by the signing experts. The Banwarts further argued that the defendants should be equitably estopped from relying on section 147.140 because of their two-and-a-half-year delay in challenging the certificates while the parties engaged in significant discovery. The Banwarts also argued that section 147.140 is unconstitutionally vague.

The district court denied the defendants' motion as to the certificates of merit. The district court ruled that the Banwarts substantially complied with section 147.140's affidavit requirements. The district court determined that there was a disputed question of fact as to whether the limitations period began with the back surgery in late July or on the date of the MRI in mid-August. But the district court concluded that the tolling provision in our supervisory order

violated the separation-of-powers doctrine and thus was ineffectual. The district court on that ground granted summary judgment in favor of the defendants.

The Banwarts appeal. They argue that the district court erred in concluding that the tolling provision is unconstitutional. The defendants urge us to affirm the district court's holding on the tolling provision and cross-appeal from the district court's other rulings on the fact question as to when the statute of limitations began to run and the Banwarts' substantial compliance with section 147.140's affidavit requirement. The Banwarts, in turn, ask us to affirm the district court's ruling that their certificates of merit substantially complied with section 147.140 or alternatively hold that the statute is void for vagueness. Finally, citing *S.K. v. Obstetric & Gynecologic Associates of Iowa City & Coralville, P.C.*, the Banwarts contend that the defendants' two-and-a-half-year delay in seeking summary judgment precludes relief under section 147.140. We retained the case.

## II. Standard of Review.

We review rulings on motions for summary judgment for correction of errors at law. *Miller*, 7 N.W.3d at 373. We also review the district court's rulings on statutory interpretation for correction of errors at law. *Id.* at 372. "We review constitutional issues de novo." *State v. Basquin*, 970 N.W.2d 643, 651 (Iowa 2022) (quoting *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002)); *see also State v. Geddes*, 998 N.W.2d 166, 171 (Iowa 2023) (applying de novo review for void-for-vagueness challenge to statute).

"Whether a party has waived its statutory right by its inconsistent litigation conduct can be a question of law 'for the court to decide.' " *See S.K.*, 13 N.W.3d 546, 572 (Iowa 2024) (Waterman, J., concurring) (quoting *Mod. Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.*, 581 N.W.2d 616, 620 (Iowa 1998),

*overruled on other grounds by Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22 (Iowa 1999)).

### III. Analysis.

We bypass the statute of limitations issues and resolve this case on the cross-appeal under Iowa Code section 147.140. We apply *Miller v. Catholic Health Initiatives–Iowa, Corp.* and *Shontz v. Mercy Medical Center–Clinton, Inc.* to hold that the Banwarts did not substantially comply with the affidavit requirement of section 147.140 because their experts did not sign the certificates of merit under oath or under penalty of perjury. We also hold that section 147.140 is not void for vagueness. Finally, we hold that the defendants did not waive their rights under section 147.140 by waiting two and a half years to challenge the certificates of merit before the district court's dispositive motion deadline expired.

**A. Whether the Certificates of Merit "Affirmed" by the Experts Substantially Complied with Iowa Code Section 147.140's Affidavit Requirement.** In *Miller*, "[w]e reiterate[d] that section 147.140 'unambiguously requires that the expert witness personally sign the certificate of merit under oath within sixty days of the defendants' answer.' " 7 N.W.3d at 374 (quoting *Est. of Fahrmann v. ABCM Corp.*, 999 N.W.2d 283, 287 (Iowa 2023)). We held that the expert's signed but unsworn letter without any declaration she signed "under penalty of perjury" failed to substantially comply with section 147.140. *Id.* at 375–77 (dismissing action with prejudice).[1] Here, the Banwarts argued, and the district court ruled, that their certificates of merit substantially complied with section 147.140 because the experts "affirmed" their statements. We disagree.

---

[1]We noted our holding requiring dismissal was supported by cases from other jurisdictions construing equivalent certificate of merit statutes. *Miller*, 7 N.W.3d at 376–77 (collecting cases).

The district court ruled before we decided *Miller* or our subsequent decision in *Shontz*, 2024 WL 2868931, at \*1, where we squarely held that the expert's affirmation did not substantially comply with the statute's affidavit requirement. In *Shontz*, we again reiterated that the expert must sign the certificate of merit under oath or "under penalty of perjury." *Id.* The experts here did neither. We see no good reason to vary from *Shontz* or limit *Miller*.

The legislature knows how to allow signers to either "swear or affirm" and to allow either an "oath or affirmation," as provided in other statutes.[2] By contrast, section 147.140 lacks the words "affirm" or "affirmation" while requiring an affidavit that the expert signs under oath. Iowa Code § 147.140.[3] "An affidavit is a written declaration made under oath . . . before any person authorized to administer oaths within or without the state." *Id.* § 622.85. Affidavits include a jurat completed by the notary (or other authorized person) "to prove the oath was administered." *Miller v. Palo Alto Bd. of Supervisors*, 84

---

[2]*See, e.g.*, Iowa Code § 43.43 ("Each person voting at a primary election shall sign a declaration of eligibility which shall be in substantially the following form: I do solemnly swear or affirm that I am a resident of . . . ."); *id.* §§ 48A.7A(4)(*a*) ("The form of the written oath required of the person registering [to vote] under this section shall read as follows: I, (name of registrant), do solemnly swear or affirm all of the following . . . ."), .14(3) ("A challenge shall contain a statement signed by the challenger in substantially the following form: I am a registered voter in (name of county) County, Iowa. I swear or affirm that information contained on this challenge is true."); *id.* §§ 49.75 ("[E]ach of the board members shall take the following oath: I, A. B., do solemnly swear or affirm that I will impartially, and to the best of my knowledge and ability, perform the duties of precinct election official . . . ."), .78(5) ("The form of the written oath required of a registered voter attesting to the identity and residency of the voter unable to present a form of identification shall read as follows: I, . . . do solemnly swear or affirm all of the following . . . ."); *see also*, Iowa Const. art. III, § 32 ("Members of the general assembly shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear, or affirm . . . .' "); Iowa R. Crim. P. 2.3(6)(*c*)(1) ("The following oath shall be administered to the grand jury: 'Do each of you solemnly swear or affirm that you will . . . .' "); Iowa R. Evid. 5.603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.").

[3]*See* Iowa Code § 4.1(19) ("The word 'oath' includes affirmation in all cases where an affirmation may be substituted for an oath, and in like cases the word 'swear' includes 'affirm.' " (emphases omitted)). An affidavit requires a third person authorized to administer the oath, and the permissible substitute for an affidavit requires the statement that the person is signing under "penalty of perjury." *Id.* § 622.1(1). The omission of that language is fatal to the Banwarts' case.

N.W.2d 38, 40 (Iowa 1957). Alternatively, the affidavit requirement may be satisfied by a declaration signed expressly "under penalty of perjury." Iowa Code § 622.1. If the certificate lacks a jurat, then the "under penalty of perjury" language must be included to satisfy section 147.140. *See Miller*, 7 N.W.3d at 375; *State v. Carter*, 618 N.W.2d 374, 377–78 (Iowa 2000) (en banc) (affirming dismissal of perjury charge because the "under penalty of perjury" phrase was missing). In *State v. Carter*, we elaborated on the importance of that phrase:

> We conclude our legislature intended the "oath or affirmation" element of perjury under section 720.2 to be accomplished in the presence of an authorized official. This requirement is not only consistent with our case law, but is also consistent with our common law. We strive to interpret our statutes consistent with our case law. Additionally, we interpret statutes consistent with the common law unless the statutory language clearly negates the common law.

> We recognize our legislature is free to alter this traditional requirement of an "oath or affirmation" by statute. Yet, the only statute which eliminates the presence of another requirement for an oath or affirmation is found in section 622.1. This section now permits sworn written statements required or permitted by law to be attested by a signed and dated unsworn written statement that the person "certif[y] under penalty of perjury" the statement is "true and correct." This statute, however, does not help the State in this case.

> *Although our legislature permits a written attestation to be accomplished alone, it also requires the certification to expressly impress upon the person that it is made "under penalty of perjury."* This is an important requirement because the "under penalty of perjury" language, like the administration of an oath by an official, acts to bind the conscience of the person and emphasizes the obligation to be truthful.

> Even assuming the application in this case fell within the self-attestation provisions of section 622.1 as a matter required or permitted to be supported by a sworn statement written by the person attesting the matter, *the language of the certification on the application fell far short of substantially complying with the language required by the statute. The language of the application to the board in this case did not indicate it was executed "under penalty of perjury."* A certification which does not contain language which substantially complies with this phrase is outside the statute. If the

> requirements of section 622.1 are not satisfied, the presence of another to administer an oath remains necessary to support a perjury charge under section 720.2. Moreover, we can find no other instance where our legislature has relaxed the oath or affirmation requirement to support the charge of perjury.

618 N.W.2d at 377–78 (emphases added) (citations omitted) (quoting Iowa Code § 622.1). The Banwarts do not ask us to overrule *Carter*, and we reaffirm its holding.

We reiterate that to satisfy section 147.140's affidavit requirement, counsel must ensure that a timely certificate of merit is signed by the expert under oath or under penalty of perjury. "A contrary holding would undermine many Iowa statutes requiring sworn statements or verifications." *Miller*, 7 N.W.3d at 375.

The Banwarts argue that the expert's "affirmation" is sufficient because, in their view, a medical expert cannot be subject to perjury for giving opinion testimony. We disagree with that premise. What if the expert lies about his or her qualifications? *See, e.g.*, *State v. Wolfrum*, 175 P.3d 206, 207 (Idaho Ct. App. 2007) (affirming the perjury conviction of an expert witness who lied about his credentials); *State v. Sullivan*, 130 A.2d 610, 615–16 (N.J. 1957) (affirming the perjury conviction of a medical doctor and rejecting his argument that he could not be criminally liable for giving medical opinions). Or what if the medical expert falsely testifies to holding opinions he or she in fact disbelieves? *See State v. Hawkins*, 620 N.W.2d 256, 262–63 (Iowa 2000) (en banc) (affirming the defendant's perjury conviction for false opinion testimony and collecting cases upholding perjury convictions when the witness in fact had no such belief or opinion). Experts, like other humans, have been known to lie. Experts and lay witnesses alike must raise their right hand at trial.

"Substantial compliance" has a defined meaning in our caselaw. *Miller*, 7 N.W.3d at 374 ("Substantial compliance means 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.' " (quoting *Hummel v. Smith*, 999 N.W.2d 301, 309 (Iowa 2023))). We applied that definition in *Miller*. *Id.* The Iowa legislature made the policy choice to deter false expert testimony in medical malpractice actions by requiring the expert to sign the certificate of merit under oath or under penalty of perjury. "This requirement can help weed out weak cases early when experts are deterred by the risk of criminal penalties for perjury and decline to sign the requisite certificate under oath." *Id.* at 376; *see also Paradis v. Webber Hosp.*, 409 A.2d 672, 675 (Me. 1979) ("The oath provision in [Maine's medical malpractice statute] is more than a mere technicality. Its function is both to make clear the significance of filing the document itself *and to provide a basis for a perjury action upon proof of falsification.*" (emphasis added)), *superseded by statute on other grounds*, 1985 Me. Laws ch. 804, § 12 (codified at Me. Stat. tit. 24, § 2851–2859 (2012)), *as recognized in Frame v. Millinocket Reg. Hosp.*, 82 A.3d 137 (Me. 2013). We "are not at liberty to eliminate the requirement that the expert sign the certificate of merit under oath when the governing statute uses the term 'affidavit' six times." *Shontz*, 2024 WL 2868931, at *1 (quoting *Miller*, 7 N.W.3d at 375). Our job is to apply section 147.140 as written.

We hold that the Banwarts' certificates of merit did not substantially comply with section 147.140 because they were not signed by the expert under oath or expressly "under penalty of perjury" to fulfill an essential purpose of the statute. The district court erred by ruling that the Banwarts substantially complied with section 147.140. We reverse that determination.

**B. Whether Iowa Code Section 147.140 is Void for Vagueness.** The Banwarts argue that section 147.140's "oath" and "substantial compliance"

provisions are unconstitutionally void for vagueness. We disagree. As we have held repeatedly, the statute unambiguously requires that the expert sign the certificate of merit under oath or under penalty of perjury. *See Miller*, 7 N.W.3d at 374. We reject void-for-vagueness challenges to unambiguous statutes. *See, e.g., State v. Rhodes*, 6 N.W.3d 741, 752 (Iowa 2024) ("And the district court correctly rejected Rhodes's void for vagueness argument finding the statute unambiguous, as do we."); *see also State v. Coleman*, 907 N.W.2d 124, 146–47 (Iowa 2018) (holding that an ambiguous sex offender registry statute was not unconstitutionally vague because it could be understood in context with related statutes).

"[I]n determining whether a statute is unconstitutionally vague, this court presumes the statute is constitutional and gives 'any reasonable construction' to uphold it." *State v. Middlekauff*, 974 N.W.2d 781, 801 (Iowa 2022) (alteration in original) (quoting *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007)). The "challengers to a statute must refute 'every reasonable basis' upon which a statute might be upheld." *Nail*, 743 N.W.2d at 540 (emphasis omitted) (quoting *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)), *as recognized in In re T.H.*, 913 N.W.2d 578 (Iowa 2018)). The void-for-vagueness doctrine is typically applied to criminal statutes when it is unclear what conduct is prohibited. Criminal statutes are subject to stricter scrutiny than those imposing only civil penalties. *See MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 344–47 (Iowa 1980) (en banc) (rejecting vagueness challenge to ordinance regulating massage parlors). "Civil statutes . . . generally receive less exacting vagueness scrutiny." *McDowell v. County of Lassen*,

No. 2:23–cv–01007, 2024 WL 919189, at *5 (E.D. Cal. Mar. 4, 2024) (collecting cases). "A civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms 'so vague and indefinite as really to be no rule or standard at all.'" *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004) (quoting *Ass'n of Int'l Auto. Mfrs. v. Abrams*, 84 F.3d 602, 614 (2d Cir. 1996)). The Banwarts cannot even show section 147.140 is ambiguous, and they fall well short of demonstrating that this civil statute is so vague as to be unconstitutional.

The Banwarts cite no appellate cases holding that a civil statute's substantial compliance provision is unconstitutionally void for vagueness. We have never struck down a substantial compliance term in a civil statute on vagueness grounds. Other courts have rejected such challenges. *See, e.g.*, *Whispering Oaks RCF Mgmt. Co. v. Mo. Dep't of Health & Senior Servs.*, 444 S.W.3d 492, 502 (Mo. Ct. App. 2014) (holding substantial compliance provision is licensing statute was not void for vagueness). Similarly, the Banwarts cite no appellate authority holding that an "oath" requirement in an Iowa statute is void for vagueness, and we found none. Again, other courts have rejected vagueness challenges to statutory oath requirements. *See, e.g.*, *Indep.-All. Party of Minn. v. Simon*, 646 F. Supp. 3d 1018, 1029 n.4 (D. Minn. 2022) (rejecting void-for-vagueness challenge to a statute's oath requirement and stating, "[N]either the challenged statute's text, nor any authority the Party has cited, support the conclusion that the oath-acceptance requirement is plausibly susceptible to a void-for-vagueness challenge"). A holding that the oath requirement in section 147.140 is unconstitutionally vague would call into question many other statutes with oath or affidavit requirements. *See, e.g.*, Iowa Code § 598.13 (requiring financial affidavits in marital dissolution proceedings); *id.* § 686B.4

(requiring a "detailed narrative medical report and diagnosis signed under oath by a qualified physician" as a prerequisite to filing a claim for nonmalignant asbestos injuries).

We hold that Iowa Code section 147.140 is not unconstitutionally void for vagueness.

**C. Whether the Defendants Waived Their Rights Under Iowa Code Section 147.140.** The defendants waited two and a half years after this lawsuit commenced before filing a dispositive motion under section 147.140(6) challenging the Banwarts' certificates of merit. In district court, the Banwarts argued that the defendants were estopped by their delay and litigation conduct from challenging the certificates of merit. The defendants responded that section 147.140 has no deadline for defendants to challenge deficient certificates of merit and they moved for summary judgment under section 147.140(6) over a year before the district court's dispositive motion deadline and trial. The district court did not decide whether the defendants waited too long to challenge the certificates because the court ruled that the certificates substantially complied with the statute.[4]

After these parties filed their appellate briefs, we decided *S.K.*, which held under the unique posture of that case that the defendant medical clinic, "impliedly waived its right to dismissal under section 147.140(6) by failing to raise the issue before final judgment, by the dispositive motion deadline, or indeed at any time during nearly four and a half years of litigation until its

---

[4]Because the Banwarts prevailed in the district court's certificate of merit ruling, they did not need to file a motion under Iowa Rule of Civil Procedure 1.904(2) to preserve error on their alternative ground that defendants waited too long to challenge the certificates. The Banwarts are cross-appellees in our review of this issue, and raised the waiver argument in their notice of additional authority that cited *S.K.*

appellate motion to reverse." 13 N.W.3d at 569 (Waterman, J., concurring).[5] We noted "[t]he objective of Iowa's certificate of merit statute—early dismissal and resulting cost avoidance—is thwarted when the defendant waits until close to or after trial to seek dismissal." *Id.* at 572. We expressly declined to decide "the precise point at which a motion challenging a certificate of merit affidavit becomes untimely," but stated "we have no trouble saying that it is too late once the district court issues its final judgment." *Id.* at 569. Unlike the defendant in *S.K.*, the defendants in this case moved for summary judgment under section 147.140(6) over a year *before* their dispositive motion deadline and trial date.

The legislature included no deadline within section 147.140(6) to challenge a deficient certificate of merit affidavit. We have already recognized that defendants, by conducting discovery, do not "constructively waive[]" their right to challenge deficient certificates of merit under section 147.140(6).[6] *Id.* at 572–73; *see also McHugh v. Smith*, 966 N.W.2d 285, 291 (Iowa Ct. App. 2021) ("Nothing in the statutory language supports [the plaintiff's] proposition that [the defendant, by engaging in discovery,] constructively waived the requirement that she timely file the certificate of merit affidavit.").[7] Using the dispositive motion

---

[5]Four justices joined this concurrence, which represents the majority opinion on this issue. *See S.K.*, 13 N.W.3d at 553–54.

[6]The waiver analysis differs in arbitration cases. *See Mod. Piping*, 581 N.W.2d at 621 ("[P]ursuing discovery is regarded as being inconsistent with demanding arbitration, since discovery is not generally available in arbitration." (quoting *Joba Constr. Co. v. Monroe Cnty. Drain Comm'r*, 388 N.W.2d 251, 254 (Mich. Ct. App. 1986) (per curiam))).

[7]The court of appeals has consistently held that defendants do not waive their right to dismissal under section 147.140(6) by conducting discovery before filing a dispositive motion under that statute. *See, e.g.*, *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, No. 22–0101, 2022 WL 3440703, at *3–4 (Iowa Ct. App. Aug. 17, 2022) ("[E]ngagement in discovery . . . does not constitute a definite offer to refrain from filing a motion to dismiss on [section 147.140(6)] ground[s]."), *vacated in part on other grounds*, 987 N.W.2d 834 (Iowa 2023); *Butler v. Iyer*, No. 21–0796, 2022 WL 1100275, at *4–5 (Iowa Ct. App. Apr. 13, 2022) (determining that "defendants [did not] waive the affidavit requirement by engaging in discovery" and declining to " 'read' a

deadline as a bright line for determining waiver avoids a fact-intensive inquiry into how much discovery is too much. *See Lackey v. Stinnie*, 604 U.S. ___, ___, 2025 WL 594737, at *6 (Feb. 25, 2025) ("The rule we establish today also serves the interests of judicial economy. A straightforward, bright-line rule is easy to administer, reducing the risk of [more litigation] . . . ."). Going forward, parties should rely upon this bright line rather than statements we made in *S.K.* We note, however, that the outcome in *S.K.* is consistent with the bright-line rule here.

The cost avoidance purpose of section 147.140 is for the protection and benefit of medical malpractice defendants, not plaintiffs. "Section 147.140(3) incorporates by reference, and works in tandem with, the expert disclosure requirements in Iowa Code section 668.11 (requiring disclosure of expert witnesses in professional liability cases 'within one hundred eighty days of the defendant's answer')." *Struck v. Mercy Health Servs.–Iowa Corp.*, 973 N.W.2d 533, 541 (Iowa 2022); *see also* Iowa Code § 147.140(3) ("The parties shall comply with the requirements of section 668.11 . . . ."). In our view, defendants may control the timing of their motions for summary judgment, subject to the district court's dispositive motion deadline, without waving their rights under section 147.140. *See Stanton v. Knoxville Comm. Hosp., Inc.*, No. 19–1277, 2020 WL 4498884, *4–6, *4 n.3 (Iowa Ct. App. Aug. 5, 2020) (citing *Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) (en banc)) (rejecting the argument that the timing of the medical malpractice defendants' motion for summary judgment supported good cause for relief from the plaintiff's expert disclosure deadline under section 668.11, and noting "Stanton's contrary view would turn defense counsel into their 'brother's keeper' ").

---

waiver clause 'into the new statute that the legislature did not communicate through its drafting' " (quoting *McHugh*, 966 N.W.2d at 291)).

We hold as a matter of law that the defendants did not waive their statutory right to dismissal under Iowa Code section 147.140(6) when their motion for summary judgment was filed before the district court's dispositive motion deadline.

**IV. Disposition.**

For those reasons, we reverse the district court's summary judgment ruling on the certificates of merit. We remand the case for entry of summary judgment in favor of the defendants under Iowa Code section 147.140(6).

**Reversed on Cross-Appeal and Case Remanded with Instructions.**

Christensen, C.J., and Mansfield, McDonald, and May, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which Oxley, J., joins.

#24–0027, *Banwart v. Neurosurgery of North Iowa, P.C.*

**McDermott, Justice (dissenting).**

Iowa Code § 147.140(1)(*a*) (2020) requires a plaintiff in certain personal injury cases to serve "a certificate of merit affidavit" from an expert witness. But the law allows some play in the joints on how strictly the plaintiff must satisfy the statute's requirements, with the statute stating that a plaintiff need only "substantially comply" with them. *Id.* § 147.140(6). The majority concludes that the plaintiffs in this case did not substantially comply with the statute when they provided a written affirmation from their experts instead of a notarized affidavit. But a written affirmation, by definition, exposes its signer to penalties of perjury, which satisfies the statute's purpose of ensuring the expert witness's truthfulness. Because the written affirmations in this case substantially complied with § 147.140(1)'s requirements, I must respectfully dissent.

**A. Substantial Compliance with the Expert Certification Requirements.** Iowa Code § 147.140(1)(*a*) requires a plaintiff in a personal injury case against a healthcare provider to serve within sixty days of the defendant's answer "a certificate of merit affidavit" from an expert witness on the standard of care and asserting a breach of that standard. Specifically, the statute requires that

> [a] certificate of merit affidavit must be signed by the expert witness and certify the purpose for calling the expert witness by providing under the oath of the expert witness all of the following:
>
> (1) The expert witness's statement of familiarity with the applicable standard of care.
>
> (2) The expert witness's statement that the standard of care was breached by the health care provider named in the petition.

*Id.* § 147.140(1)(*b*). A failure to "substantially comply" with these requirements "shall result, upon motion, in dismissal with prejudice of each cause of action as

to which expert witness testimony is necessary to establish a prima facie case." *Id.* § 147.140(6).

The Banwarts served certificates from two experts. Each begins: "In compliance with Iowa Code Section 147.140, [the expert] does hereby affirm and state, as follows," followed by a recitation of the applicable standard of care and an explanation about how the defendants breached that standard of care. At the conclusion of the report appears a date and signature line. No notarization or statement of having signed "under penalty of perjury" appears on the document.

In *Miller v. Catholic Health Initiatives–Iowa, Corp.*, 7 N.W.3d 367, 373–74 (Iowa 2024), we noted that the text of the statute repeatedly includes the word "affidavit." We concluded that to substantially comply with the certificate of merit *affidavit* requirement, the document must satisfy the basic elements of an affidavit. *Id.* at 375. The Iowa Code defines an affidavit as "a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state." Iowa Code § 622.85. In *Miller*, we held that a signed letter on a hospital's letterhead that did not include a witness's signature, a sworn oath, or any declaration that that expert signed it under penalty of perjury did not substantially comply with the requirements of § 147.140. 7 N.W.3d at 375.

But the expert certifications in this case are different—in critical ways— from the mere letter that the expert provided in *Miller*. The certificates here stated that the experts "affirm" their statements; no such language, or similar language, appeared in *Miller*. In *Miller*, we focused on the lack of any language that would show an "oath *or affirmation* was accomplished in such a way that the person's conscience was bound." *Id.* (emphasis added) (quoting *State v. Carter*, 618 N.W.2d 374, 376 (Iowa 2000) (en banc)). With such language wholly absent in

*Miller*, we held that the expert's letter failed to substantially comply with § 147.140's requirements. *Id.* at 374–75.

As we also discussed in *Miller*, other components of an affidavit in that case had similarly not been observed, including that the contents were not "sworn to by the declarant before an officer authorized to administer oaths." *Id.* at 374 (quoting *Tunia v. St. Francis Hosp.*, 832 A.2d 936, 939 (N.J. Super. Ct. App. Div. 2003)). With an affidavit, a notary places on the document the notary's own certification (called a "jurat"). The jurat typically certifies that the signer appeared before an officer who administered an oath or affirmation to the signer, with the signer swearing or affirming the contents of the document. *See Jurat, Black's Law Dictionary* 1013 (12th ed. 2024) [hereinafter *Black's Law Dictionary*]. To fulfill the technical requirements of an affidavit, the declarant must offer an oath or affirmation "before [a] person authorized to administer oaths." Iowa Code § 622.85. No official administered an oath when the Banwarts' experts signed the certifications.

But as the Banwarts emphasize, the legislature has provided an alternate path in Iowa Code § 622.1(1) to satisfy the requirements of an affidavit without the need for an oath-administering official. This statute states:

> When the laws of this state or any lawful requirement made under them requires or permits a matter to be supported by a sworn statement written by the person attesting the matter, the person may attest the matter by an unsworn written statement if that statement recites that the person certifies the matter to be true under penalty of perjury under the laws of this state, states the date of the statement's execution and is subscribed by that person.

*Id.*

The expert certifications do not contain a recitation that they are made "under penalty of perjury." If *technical* compliance were the standard, this would end the discussion. But Iowa Code § 147.140(6) requires only that the

certifications "substantially comply" with the requirements. "Substantial compliance," we have said, means "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Super./Ideal, Inc. v. Bd. of Rev.*, 419 N.W.2d 405, 407 (Iowa 1988).

What are "the reasonable objectives of the statute" in this instance? In *Miller*, we said the purpose of the affidavit requirement in § 147.140(1) was "to bind the conscience of the person and emphasize[] the obligation to be truthful." 7 N.W.3d at 375 (quoting *Carter*, 618 N.W.2d at 376). To state the point using the language of § 622.1(1), to bind the experts' consciences, the experts needed to subject themselves to penalties of perjury in signing their certifications. The Banwarts argue that because the experts used a written affirmation for their certificates of merit, the statements were in fact made under penalty of perjury and thus substantially complied with § 622.1(1).

An "affirmation," by definition, subjects the declarant to penalties of perjury:

> **affirmation:** *n.* (15c) A solemn pledge equivalent to an oath but without reference to a supreme being or to swearing; a solemn declaration *made under penalty of perjury*, but without an oath. • While an oath is "sworn to," an affirmation is merely "affirmed," but either type of pledge *may subject the person making it to the penalties of perjury.*

*Affirmation, Black's Law Dictionary* at 72 (emphasis added) (citations omitted). Further, the legislature's own definition of "oath" in the Iowa Code—which similarly subjects its declarant to penalties of perjury—includes an "affirmation." Iowa Code § 4.1(19) (stating that "[t]he word '*oath*' includes affirmation in all cases where an affirmation may be substituted for an oath, and in like cases the word '*swear*' includes '*affirm*' ").

Under Iowa law, an oath or affirmation is essential to a perjury charge. Iowa Code § 720.2 provides that perjury occurs when a person, "while under

oath *or affirmation* in any proceeding or other matter in which statements under oath *or affirmation* are required or authorized by law, knowingly makes a false statement of material facts or who falsely denies knowledge of material facts." (Emphases added.) Similarly, Iowa Code § 321.217 imposes perjury penalties under Iowa's motor vehicle chapter against "[a]ny person who makes any false affidavit, or knowingly swears *or affirms* falsely to any matter or thing required." (Emphasis added.) Before testifying, witnesses in Iowa courts "must give an oath *or affirmation* to testify truthfully." Iowa R. Evid. 5.603 (emphasis added).

*Oath* and *affirmation* carry the same legal significance, but there is a semantic reason for their distinction. *See* Robert G. Natelson, *The Original Meaning of the Establishment Clause*, 14 Wm. & Mary Bill Rts. J. 73, 109 (2005). An "oath" refers to a supreme being or deity, while an "affirmation" does not. *See id.* An affirmation is an alternate option for people that have "conscientious[] scrup[les]" against swearing to a higher power. 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1838, at 702–03 (1833) (stating that the framers required people taking public office to make a "solemn obligation," but for those "who are conscientiously scrupulous of taking oaths[,] . . . to prevent any unjustifiable exclusion from office, the constitution has permitted a solemn affirmation to be made instead of an oath, and as its equivalent").

Although our court has never addressed a case charging perjury based only on an affirmation, our neighbor to the east has. In *People v. Barrios*, the Illinois Supreme Court upheld a perjury conviction for a man who falsely stated on his driver's license application that his driver's license had not been revoked. 500 N.E.2d 415, 416, 420 (Ill. 1986). The defendant signed the application under a line that stated: "I hereby affirm that the information I have furnished in this application for license is true to the best of my knowledge and belief." *Id.* at 416 (capitalization altered). On appeal, the court upheld the defendant's perjury

conviction and four-year prison sentence, concluding that the defendant's conduct constituted perjury because he had made a false statement on his application "under oath or affirmation." *Id.* at 417–18.

We have suggested that a substantial-compliance standard applies to § 622.1(1) even in the absence of the express substantial-compliance provision that governs this case in § 147.140(6). In *State v. Carter*, we analyzed whether a certification that did not include the "subject to penalty of perjury" language nonetheless subjected a defendant to a perjury charge based on substantial compliance with § 622.1(1). 618 N.W.2d at 375. Carter applied to the Iowa Board of Pharmacy Examiners to be a registered pharmacy technician. *Id.* The application required her to disclose various background information, including whether she had ever been charged or convicted of a crime more serious than a traffic offense. *Id.* Carter marked that she had not. *Id.* Immediately above the signature line, the application stated: "I certify to the Iowa Board of Pharmacy Examiners that the information I have provided on this registration application is true and correct." *Id.* The application was signed but neither notarized nor otherwise verified. *Id.*

As it turned out, Carter had previously been convicted of a felony drug crime. *Id.* The state charged her with perjury. *Id.* at 375–76. The district court dismissed the charge, concluding she "did not sign the application under oath or affirmation" as required to support a perjury charge. *Id.* at 376. We affirmed the dismissal on appeal. *Id.* at 378. In analyzing whether the certification satisfied § 622.1(1) to support a perjury charge, we concluded that the application's language "fell far short of *substantially complying* with the language required by the statute" because it set forth neither the "under penalty of perjury" language nor "language which *substantially complies* with this phrase." *Id.* (emphases added).

The majority puts form over function by declaring that the absence of the phrase "under penalty of perjury" decides the ballgame. In so doing, the majority rejects language that *creates* the penalty of perjury and insists on words that merely label it. The experts' avowal that they "affirm" the statements in the certificates of merit *itself* subjects them to penalties of perjury. The majority's approach is wrong not only because when evaluating substantial compliance with a rule or statute we generally do not require particular language, *see State v. Duckworth*, 597 N.W.2d 799, 800–01 (Iowa 1999) (per curiam), but because it goes against how Iowa law defines perjury: when a person "knowingly makes a false statement of material facts or who falsely denies knowledge of material facts" while "under oath *or affirmation*," Iowa Code § 720.2 (emphasis added).

The majority suggests that an unpublished case with similar facts, *Shontz v. Mercy Medical Center–Clinton, Inc.*, No. 23–0719, 2024 WL 2868931, at *1 (Iowa June 7, 2024) (per curiam) (unpublished opinion), if not dictates the outcome of this case, exerts some precedential pull. But *Shontz* is an unpublished opinion from our court. "Unpublished opinions of this court are not precedential," we have said, "which is why our court generally does not cite them." *State v. Shackford*, 952 N.W.2d 141, 145 (Iowa 2020). What's more, the plaintiff in *Shontz* did not raise below or argue in its briefing that they substantially complied through § 622.1(1). *See* 2024 WL 2868931, at *1. "It is a well-established rule of appellate procedure that '[t]he scope of appellate review is defined by the issues raised by the parties' briefs.' " *Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (Iowa 2001) (en banc) (alteration in original) (quoting *Martins v. Dull* (*In re Est. of Dull*), 303 N.W.2d 402, 407 (Iowa 1981), *superseded by court rule on other grounds*, Iowa R. Civ. P. 1.421). But the Banwarts have argued substantial compliance with § 622.1(1) here, and the district court focused on it in ruling in the Banwarts' favor below. In the words

of Justice Jackson, "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." *Massachusetts v. United States*, 333 U.S. 611, 639–40 (1948) (Jackson, J., dissenting).

Because an affirmation subjects the person making it to the penalties of perjury, the recitation that the expert "does hereby affirm" the statements in each certification substantially complied with the requirements of § 622.1(1). And in substantially complying with the requirements of § 622.1(1), the Banwarts' expert certifications met the requirements of § 147.140. I thus would affirm the district court's ruling on this issue.

**B. The Defendants' Statute of Limitations Arguments.** Although the district court found substantial compliance with § 147.140's requirements, it ruled on two other issues, ultimately granting summary judgment against the Banwarts on one of them. The district court first considered whether the statute of limitations expired. It held that an issue of fact existed preventing summary judgment about whether the limitations period began around the date of the back surgery in late July or the date of the MRI in mid-August. The district court then considered the constitutionality of the tolling provision in our supervisory order. On this issue, it concluded that the provision violated the separation of powers and thus was ineffectual. The district court granted summary judgment in favor of the surgery center and doctors. They urge us to affirm the district court's holding on the statute of limitations question, and they cross-appeal the district court's other ruling about the date from which the statute of limitations runs.

Some dates are important. Dr. Beck performed Marlene's back surgery on July 24, 2018. Dr. Getta provided postoperative care a week after the surgery, on July 31. But after several additional weeks of postoperative pain, Marlene sought treatment from a doctor at a different clinic on August 15, 2018. When

that doctor performed an MRI the same day, the MRI revealed that Marlene had suffered an epidural hematoma (bleeding at the outer membrane of the brain and spinal cord), requiring a separate medical procedure to resolve.

People generally have two years to file a medical malpractice lawsuit to recover damages. *See* Iowa Code § 614.1(9)(*a*). The Banwarts didn't file their lawsuit until October 19, 2020—a date beyond the two-year statute of limitations. Yet in a series of supervisory orders entered in response to the COVID-19 pandemic, our supreme court tolled all statutes of limitations seventy-six days for claims that otherwise would have expired between March 17, 2020, and December 31, 2020. This would have included the Banwarts' claims.

In their motion for summary judgment, the surgery center and doctors first argued that our court's COVID-19 supervisory order tolling the statute of limitations was ineffectual because it violated the separation of powers. They further argued that even if the supervisory order was constitutional, the Banwarts missed the tolled deadline because October 19, 2020, is more than two years and seventy-six days from late July 2018, when she started to experience significant pain. In their resistance to the motion, the Banwarts argued that the tolling provision was constitutional and that the statute of limitations did not begin to run until the MRI on August 15, 2018, making the October 19, 2020 lawsuit timely filed within the tolling period.

The Banwarts argue that the district court erred in holding that the tolling provision violated our constitutional separation of powers. The question presented is identical to the one we recently decided in *Rivas v. Brownell*, ___ N.W.3d ___, 2025 WL 645109 (Iowa Feb. 28, 2025), and the parties in this case make arguments nearly identical to the ones we considered in *Rivas*. The holding in *Rivas* thus controls the outcome of this question in this appeal. Applying *Rivas* in this case, the district court erred in dismissing the Banwarts' lawsuit based

on a statute of limitations violation resulting from a constitutional infirmity in the tolling provision. *See id.* at ___, 2025 WL 645109, at *10.

Turning to the defendants' alternative arguments about the limitations period, they argue that even if the tolling provision is constitutional, the petition was still untimely filed. Iowa Code § 614.1(9)(*a*) gives plaintiffs two years to file a medical malpractice lawsuit from the date which they knew or should have known they were injured. The lawsuit's filing on October 19, 2020, is two years and eighty days after July 31, 2018, and thus, the defendants argue, beyond the extra seventy-six days provided in the supervisory order.[8]

Resolving this argument requires a factual determination about when the clock starts running. The defendants point to Marlene's allegation that she suffered significant back pain starting shortly after the surgery, including an inability to walk, and argue that she thus knew, or at minimum reasonably should have known, of her injury in late July, well before the MRI. The Banwarts argue that the starting date for the calculation is not July 31 but August 15, which was the date the MRI revealed that Marlene had suffered an epidural hematoma. This date brings her lawsuit (at two years and sixty-five days) within the tolling period. On this point, the district court concluded that a dispute of material fact existed.

Iowa Code § 614.1(9)(*a*) provides that the statute of limitations for medical malpractice claims such as the Banwarts' begins to run "after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for

---

[8]The defendants point to slightly different dates for when the injury accrued, with the surgery center and Marlene's surgeon contending that it began to run no later than July 27, 2018 (when Marlene claims to have started feeling significant pain and an inability to walk), and the other doctor, who provided only postoperative care beginning on July 31, 2018, contending that the claim accrued as to him on that date. These minor differences in dates are immaterial since accrual from either one would exceed the tolled limitations period.

which damages are sought in the action, whichever of the dates occurs first." This requirement involves two questions: (1) when did the condition become an injury, "i.e., when did the problem worsen so that it posed a greater danger to the plaintiff or required more extensive treatment," and (2) when did the plaintiff know, or when should the plaintiff have known through the use of reasonable diligence, "of the injury and its cause in fact." *Rock v. Warhank*, 757 N.W.2d 670, 674 (Iowa 2008).

The Banwarts note that the July 24 back surgery was Marlene's fourth back surgery and that, based on her prior back surgeries, she expected postoperative pain. The Banwarts contend that because of Marlene's experience from the prior surgeries, she could not recognize the difference between ordinary postsurgical pain and the pain resulting from the epidural hematoma. The Banwarts argue that even though Marlene experienced some pain beyond what she thought was typical, she did not know about the nature of her injury until the MRI, and her failure to learn it before then shows no failure to exercise reasonable diligence.

Whether Marlene should have realized that her pain was beyond the norm for a back surgery of this type requires an understanding of both the amount of pain that Marlene in fact experienced and the amount of pain that Marlene expected to experience. Stated differently, whether Marlene realized or should have realized she'd suffered a separate injury as a result of the back surgery is not just some quantification of her actual pain, but the measure of pain compared with her anticipated level of pain or, for Marlene, some previously experienced level of pain. Both questions present considerable difficulties in measurement. It's undisputed that Marlene was in pain; the question is when Marlene should have realized she was "injured"—a different concept for our purposes. Adding to the difficulty here, these components rely in considerable

part on an assessment of Marlene's credibility, both in what she experienced and what she had expected to experience.

Factual disputes that depend heavily on witness credibility must be resolved by the trier of fact. *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996). I agree with the district court that this issue involves disputes about material facts that are inappropriate for resolution on summary judgment. I thus would reject the defendants' argument on cross-appeal on this issue.

Because, in my view, the Banwarts prevail on each issue in this appeal, I would reverse the summary judgment ruling against them and remand the case for further proceedings.

Oxley, J., joins this dissent.